# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| HILARET ZAROUKIAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>MERCEDES-BENZ USA, LLC and DAIMLER AG,<br><br>    Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Hilaret Zaroukian, by and through undersigned counsel, and on behalf of herself and all others similarly situated, alleges as follows against Mercedes-Benz USA, LLC ("MBUSA") and Daimler Aktiengesellschaft ("Daimler AG") (collectively, "Mercedes"), based upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.    Historically, automobile sunroofs have been modestly sized, spanning just a small portion of the roof over the driver and front passenger seats.

2.    Starting in the mid-2000s, automobile manufacturers expanded sunroofs in size so that now on some vehicles a sunroof (*i.e.*, sheet(s) of glass)

accounts for nearly the entire roof of a vehicle. These expanded sunroofs are often referred to as "panoramic."

3. Panoramic sunroofs are aesthetically pleasing and command a premium price. They also pose new and significant engineering challenges. Replacing metal portions of automobile roofs with large sections of glass requires precision in the strengthening, attachment, and stabilization of the glass.

4. Mercedes, along with other manufacturers, failed to meet these engineering challenges, with at least three manufacturers issuing safety recalls due to the panoramic sunroofs' propensity to spontaneously shatter.[1]

5. Mercedes vehicles suffer from an inherent design, manufacturing and/or materials defect whereby their panoramic sunroofs spontaneously shatter without outside influence.

6. The alleged defect is inherent in every Mercedes vehicle equipped with a panoramic sunroof (the "Class Vehicles.")[2]

---

[1] Mercedes refers to the enlarged sunroof feature as a Panorama roof. Regardless of the vehicle model, all will be referred to as "panoramic sunroofs" or "defective sunroofs" in this Complaint.

[2] On information and belief, the Class Vehicles are the 2003-present C Class; 2007-present CL-Class; 2013-present CLA-Class; 2003-present E-Class; 2008-present G Class; 2007-present GL-Class; 2012-present CLK; 2012-present GLC-Class; 2012-present ML-Class; 2010-present M-Class; 2015 Mercedes Maybach S-600; 2007-present R-Class; 2013-present S-Class; 2013-present SL-Class; and 2013-present

7. The shattering events are so powerful that startled drivers compare it to the sound of a gunshot, after which glass fragments rain down upon the occupants of the vehicle, sometimes occurring while driving at highway speeds.

8. Mercedes does not warn current or potential drivers of the danger(s) associated with the panoramic sunroof.

9. Mercedes continues to sell and lease its vehicles with panoramic sunroofs to consumers.

10. Mercedes does not disclose any known or potential defect nor the known or potential danger(s) of the panoramic sunroof to current or potential Mercedes vehicle consumers.

11. Plaintiff is informed and believes, and based thereon alleges, that before Plaintiff leased her Class Vehicle, and since 2013 if not before, Mercedes knew about the defect through sources not available to consumers, including pre-release testing data, early consumer complaints to Mercedes and its dealers, testing conducted in response to those consumer complaints, high failure rates of the sunroofs, the data demonstrating the inordinately high volume of replacement part sales, warranty claims and data and resulting analysis thereof, customer surveys, and

---

SLK Class.

other aggregate data from Mercedes dealers about the problem.

12.     Mercedes is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Mercedes conducts tests, including pre-sale durability testing, on incoming components, including the sunroofs, to verify the parts are free from defect and align with Mercedes's specifications. Thus, Mercedes knew or should have known the sunroofs were defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

13.     Additionally, Mercedes should have learned of this widespread defect from the sheer number of reports received from dealerships. On information and belief, Defendant MBUSA's customer relations department, which interacts with individual dealerships to identify potential common defects, has received reports regarding the defect. MBUSA's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

14.     MBUSA's warranty department similarly analyzes and collects data submitted by its dealerships to identify warranty trends in its vehicles. On information and belief, it is MBUSA's policy that when a repair is made under warranty the dealership must provide MBUSA with detailed documentation of the

problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to provide detailed information to MBUSA, because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed.

15. The existence of the defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiff and other Class Members known of the defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

16. Reasonable consumers, like Plaintiff, expect that a vehicle's sunroof is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiff and Class Members further reasonably expect that MBUSA will not sell or lease vehicles with known safety defects, such as the defective sunroof, and will disclose any such defects to its consumers when it learns of them. They did not expect MBUSA to fail to disclose the defect and to conceal the defect, and to then continually deny its existence.

17. Plaintiff, on behalf of herself and all those similarly situated, brings claims for consumer fraud, breach of warranty, common law fraud, and unjust enrichment. Plaintiff seeks damages, injunctive and declaratory relief, interest, costs and reasonable attorneys' fees.

## PARTIES

18.    Plaintiff Hilaret Zaroukian is a citizen of the State of California residing in Los Angeles County.

19.    Defendant Mercedes-Benz USA, LLC is a Delaware limited-liability corporation whose principal place of business is located at 1 Mercedes-Benz Drive, Sandy Springs, GA 30328 Mercedes, through its various entities, designs, manufactures, markets, distributes, and sells Mercedes automobiles in multiple locations in the United States and worldwide.

20.    Defendant Daimler AG is a foreign corporation headquartered in Stuttgart, Baden-Wurttemberg, Germany. Daimler AG is engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the Class Vehicles, in the United States. Daimler AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell the Class Vehicles.

21.    Daimler AG is and was at all relevant times doing business in a continuous manner through a chain of distribution and dealers throughout the United States, including within the States of California and Georgia by selling, advertising, promoting and distributing Mercedes-Benz motor vehicles.

22.    Through its wholly owned subsidiaries and/or agents, Daimler AG

markets its products in a continuous manner in the United States, including in the State of California.

23.     Daimler AG is the parent of, controls, and communicates with Mercedes-Benz USA, LLC concerning virtually all aspects of the Class Vehicles distributed in the United States.

24.     Mercedes-Benz USA, LLC acts as the sole distributor for Mercedes-Benz vehicles in the United States, purchasing those vehicles from Daimler AG in Germany for sale in this country.

25.     The relationship between Daimler AG and Mercedes-Benz USA, LLC is governed by a General Distributor Agreement that gives Daimler AG the right to control nearly every aspect of Mercedes-Benz USA, LLC's operations – including sales, marketing, management, policies, information governance policies, pricing and warranty terms.

26.     Daimler AG owns 100% of the capital share in Mercedes-Benz USA, LLC.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter, "CAFA"), codified as 28 U.S.C. § 1332(d)(2)(b). One or more of the Plaintiff or members of the class are diverse from Mercedes.

Further, Plaintiff alleges that the matter in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest and costs, and that the number of class members is greater than 100.

28.     Subject-matter jurisdiction also arises under Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq*.

29.     The Court has personal jurisdiction over Mercedes because Defendants maintain their principal places of business in this District, and regularly conduct business in this District and/or under the stream of commerce doctrine cause products to be sold in this District.

30.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District. Mercedes-Benz USA, LLC maintains its principal places of business in this District, and Defendants and caused their automobiles to be offered for sale and sold to the public in this District. *See* Exhibit 1 (Declaration of Hilaret Zaroukian).

## FACTUAL ALLEGATIONS

A.     **The Mercedes Panoramic Sunroof Defect**

31.     Mercedes manufactures, markets, and distributes mass produced

automobiles in the United States under the Mercedes brand name.

32. The Mercedes automobile models that are the subject of this case are referred to collectively as the "Class Vehicles." Plaintiff anticipates amending the Class Vehicles definition upon Mercedes identifying in discovery all of its vehicles manufactured and sold with the panoramic sunroof feature.

33. Starting in the early 2000s, Mercedes introduced vehicles with an optional upgrade of a factory-installed panoramic sunroof. The panoramic sunroof designs in all of the Class Vehicles are substantially similar in design and manufacture.

34. At that time Mercedes introduced panoramic sunroofs, they were a relatively new feature in passenger vehicles. These sunroofs are both wider and longer than traditional sunroofs, covering most of the vehicle's roof. Below is an exemplar description from Mercedes' marketing of the "giant" feature in its 2021 GLA 250 SUV.



Offering sweeping skyward views to both seating rows, this giant, fully functional glass sunroof features a large panel that can tilt up for ventilation or slide back for an open-air feeling. A power interior shade lets occupants vary the amount of sunlight entering the cabin, and you can even open and close it using the car's advanced voice control system.

(https://www.mbusa.com/en/vehicles/build/gla/suv/gla250w; last accessed on December 14, 2020).

35.     Mercedes generally markets the panoramic sunroofs as an optional feature and charges over a thousand dollars for the upgrade. See an example advertisement for the panoramic sunroof feature as part of an "optional" luxury highlight offered by Mercedes in its 2021 GLA brochure.



(https://www.mbusa.com/content/dam/mb-nafta/us/brochures/pdf/MY21_GLA_WebPDF_101520.pdf; last accessed on December 14, 2020).

36. Panoramic sunroofs are made of tempered or laminated glass that attaches to tracks, which in turn are set within a frame attached to the vehicle.

37. Most panoramic sunroofs, including those offered by Mercedes, include a retractable sunshade.

38. The panoramic sunroofs in all of Mercedes' models are substantially similar in design, materials and manufacture.

39. Panoramic sunroofs, like these, present manufacturing, design, and

safety challenges for manufacturers because the large sections of glass take up much of the surface area of the vehicle's roof.

40. One of the challenges is the material make-up of the glass. Whereas some manufacturers, such as Volvo and Honda, have used a *laminated* glass, other manufacturers, such as Nissan, Ford, Kia, Hyundai, and Mercedes, have opted to install panoramic sunroofs with *tempered* glass that features large areas of ceramic paint.

41. In In the automotive industry, tempered or toughened glass is made generally in the same manner: a piece of annealed glass is shaped and cut as to original equipment manufacturing ("OEM") standards. The glass is heated and then rapidly cooled, i.e., tempered. The tempering process creates an outer layer of compression shrink-wrapped around the middle of the glass that is constantly pressing outwards, otherwise known as causing tension or tensile force. The compressive and tensile layers create a stronger piece of glass as compared to non-tempered glazing. If the compressive layer is compromised, however, the entire piece of glass fails catastrophically, and often explosively.

42. The problems with panoramic sunroofs are compounded the use of thinner glass by automakers, including Mercedes. Mercedes, like other manufacturers, uses thinner glass in panoramic sunroofs to save weight and thus

improve fuel efficiency because Mercedes, like other automobile manufacturers, are under mandates to improve fuel efficiency. Thinner glass, however, is very difficult to temper properly (especially when thicknesses are 4mm or less) as the compressive layers are thinner, increasing the probability for the glass to be compromised and result in catastrophic failure.

43.    Additionally, the tempered glass used in Mercedes sunroofs in the Class Vehicles features a ceramic paint applied prior to tempering. Automotive ceramic paint or ceramic enamels are composed of fine powders of low melting glass frit fluxes (ground glass), pigments, and other additive oxides, sulfides, or metals. After application of the ceramic enamel, the glass is then tempered, as described above. These ceramic enamels are applied on the top around the edges of panoramic sunroof glazing and serve aesthetic and functional purposes. The ceramic paint area appears as a "black band" along the edge of the glass.

44.    Ceramic enamels are known "adulterants" in automotive glass tempering and these adulterants significantly weaken the structural strength and integrity of the Class Vehicles' tempered panoramic sunroof glazing. Among other factors, ceramic enamels compromise glass strength because: (1) the enamels have different thermal expansion coefficients than the glass substrates (the glass and the paint expand at different rates), resulting in residual stress between the ceramic

enamel and the glass substrate and (2) the glass frit will ion exchange with the glass substrate lessening or eliminating the compressive layer above the tensile region thereby significantly weakening it.

45.     The ceramic paint area was relatively small in conventional sunroofs, but ceramic paint areas have become larger with the advent of panoramic sunroofs and the result is that the glass has become progressively weaker – more likely to spontaneously burst or explode – and, for the unsuspecting driver and passengers, more dangerous.

46.     In 2013, the Korea Automobile Testing & Research Institute ("KATRI"), a vehicle safety testing institute, concluded that the enamel used for ceramic paint areas in panoramic sunroofs like those installed in Mercedes vehicles impairs the strength of the glass, making the glass not only less durable than the usual toughened glass, but also less durable than ordinary glass.

47.     Following KATRI's report, an Informal Working Group on Panoramic Sunroof Glazing was established by the United Nations Economic Commission for Europe to evaluate the safety of panoramic sunroofs. The Working Group is chaired by a representative from KATRI and was assembled to assess whether to amend the UN regulations on safety glazing. At the end of June 2016, the Working Group confirmed that conventional automotive glass enamels weaken the mechanical

strength of panoramic sunroof glazing.

48.     Another challenge presented by the panoramic sunroofs is the need to ensure the sunroof glass is fastened to the vehicle with a sufficient degree of tightness. Mercedes and other manufacturers seek to fasten the sunroof in a manner that reduces road and wind noise, as well as to make the sunroofs less susceptible to leaking rainwater. At the same time, the sunroof may be weakened with the application of pressure, as flexing and vibration caused during ordinary driving can impose stress and ultimately lead to shattering the glass.

49.     In the Mercedes models at issue, the compromised tempered glass cannot withstand the pressures and flexing that the sunroof frame and vehicle demand, even when the vehicle and sunroof are brand new. The consequence is that under ordinary driving conditions, and in some instances when the vehicle is parked or not otherwise in motion, the glass spontaneously shatters.

**B.     <u>Consumer Complaints Reveal the Magnitude of the Defect</u>**

50.     At least eighty-two Mercedes vehicle owners or lessees reported an incident of their sunroof shattering to NHTSA. A brief summary of consumer complaints appear below:

| | Date of NHTSA Complaint | Date of Incident | Model Year | Mercedes Model | NHTSA ID Number | NHTSA Consumer Complaint Excerpt |
|---|---|---|---|---|---|---|
| 1. | 10/22/2020 | 10/20/2020 | 2016 | GLE350 | 11365674 | "THE "PANORAMIC SUNROOF" (THE SLIDING PORTION) SUDDENLY EXPLODED AFTER MIDNIGHT ON AN INTERSTATE HIGHWAY AT 75 MPH - SCARING ME INTO SWERVING AND NEARLY WRECKING THE CAR. IF THE SUNSHADE HAD NOT BEEN CLOSED THE GLASS WOULD HAVE BEEN IN OUR EYES AND FACE" |
| 2. | 10/3/2020 | 9/4/2020 | 2016 | S550 | 11362560 | "I WOKE UP ONE MORNING AND WAS ASTOUNDED TO FIND A LONG DIAGONAL CRACK ACROSS THE PANORAMIC SUNROOF OF MY 2016 MERCEDES-BENZ S550. I CONTACTED MERCEDES AND WAS TOLD TO BRING THE CAR TO A DEALERSHIP FOR EVALUATION TO DETERMINE WHETHER THIS WAS DUE TO OUTSIDE INFLUENCE OR A MANUFACTURER'S DEFECT. THEY DETERMINED THAT IT WAS A "STRESS CRACK" AND STUCK ME WITH A BILL FOR $13,000. THIS IS A 2016 MODEL CAR WITH 50K MILES ON IT |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | WITH A SUNROOF THAT SPONTANEOUSLY CRACKED. WHAT IF MY WIFE AND YOUNG CHILDREN WERE IN THE CAR WHEN IT STARTED TO CRACK? THE RESPONSE FROM MERCEDES IS UNACCEPTABLE. THIS IS A VERY DANGEROUS MANUFACTURER'S DEFECT WHICH MUST BE ADDRESSED BEFORE SOMEONE GETS SERIOUSLY HURT." |
| 3. | 8/10/2020 | 8/7/2020 | 2014 | S550 | 11348455 | "AT APPROXIMATELY 0030 FRIDAY AUGUST 07, I WAS TRAVELLING 65 MPH NORTH BOUND ON THE CA215/60 FREEWAY, THERE WAS LITTLE TRAFFIC. I HEARD WHAT SOUNDED LIKE A GUNSHOT, THEN A CRINCLING GLASS SOUND AND FINALLY A WHOOSHING OF AIR I WOULD SOON SEE WAS A GAPING HOLE WHERE MY CLOSED PANORAMIC SUNROOF USE TO BE. I EXITED THE FREEWAY AT THE NEXT EXIT AND PULLED INTO A GAS STATION, GOT OUT OF THE CAR AND UPON INSPECTING THE CAR FOUND A HUGE HOLE WHERE MY PANARAMIC SUNROOF USE TO BE. I ALSO MADE A VIDEO |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | AVAILABLE AT REQUEST." |
| 4. | 7/24/2020 | 7/18/2020 | 2018 | C300 | 11341232 | "THE SUNROOF SPONTANEOUSLY EXPLODED OUT OF NO WHERE. SOUNDED LIKE A SHOTGUN BLAST." |
| 5. | 7/19/2020 | 7/19/2020 | 2015 | C300 | 11340240 | "ON JULY 19, 2020, I WAS DRIVING MY MB C300, ON HIGHWAY 301 IN BRADENTON FLORIDA. SUDDENLY, I HEARD WHAT SOUNDED LIKE A GUNSHOT. I WAS TERRIFIED. ONCE, I CALMED DOWN AND WAS ABLE TO GET TO A SAFE LOCATION, UPON EXAMINATION, I DISCOVERED THAT MY SUNROOF HAD SPONTANEOUSLY SHATTERED. THERE WAS ABSOLUTELY NO EVIDENCE OF ANY TYPE OF FOREIGN OBJECT CAUSING THE SUNROOM TO SHATTER. FORTUNATELY, WHEN THE LOUD BANG OCCURRED, I HAD THE PRESENCE OF MIND TO NOT LOSE CONTROL OF MY CAR IN WHAT COULD HAVE CAUSED AN ACCIDENT. ALSO, IF THE SUNROOF HAD BEEN PARTIALLY OPENED THE GLASS CHARDS COULD HAVE CAUSED SIGNIFICANT INJURY." |

| | | | | | | |
|---|---|---|---|---|---|---|
| 6. | 7/3/2020 | 7/2/2020 | 2015 | GLA250 | 1133729 3 | "WAS DIVING ON A LOCAL INTERSTATE AT POSTED SPEED LEVEL AND THE FRONT HALF OF THE PANORAMIC SUNROOF SHATTERED WITHOUT ANY VISIBLE/OBVIOUS REASON (NO IMPACT, PRIOR DAMAGE, ROAD CONDITIONS, ETC.). TRAFFIC WAS LIGHT, WEATHER WAS SUNNY (HIGH 80'S), ROAD CONDITIONS NORMAL/GOOD." |
| 7. | 6/23/2020 | 6/22/2020 | 2014 | GL350 | 1133041 9 | "AS I WAS DRIVING DOWN ON I-27 FROM AMARILLO TO LUBBOCK AT 70 MILES PER HOUR ON 6/22/2020 IN PLEASANT WEATHER AND NO VEHICLES EITHER IN FRONT OF ME OR BESIDE ME, THE MIDDLE PANEL OF THE PANORAMIC SUNROOF SUDDENLY EXPLODED WITH THE GLASS SHATTERING INTO PIECES AND SOME OF THE PIECES DROPPING INTO THE PASSENGER CABIN. THERE WAS NO ROCK STRIKE, HAIL, NOR WAS I TRAVELING THROUGH ANY CONSTRUCTION ZONE. THE AMBIENT TEMPERATURE OUTSIDE WAS 76 F." |

| 8. | 6/14/2020 | 6/12/2020 | 2017 | GLC | 11328810 | "THE PANORAMIC SUNROOF EXPLODED OUTWARD. I WAS DRIVING AT HIGHWAY SPEED. THIS IS THE SECOND TIME THAT THIS HAS HAPPENED ON THIS VEHICLE" |
| 9. | 6/13/2020 | 6/3/2020 | 2016 | S550 | 11328687 | "PANORAMIC SUNROOF CRACKED WITH NO KNOWN CAUSE." |
| 10 | 4/14/2020 | 3/8/2020 | 2014 | CLS550 | 11321079 | "ON MARCH 8 2020 I WAS DRIVING MY 2014 MERCEDES BENZ CLS550 STRAIGHT ON THE FREEWAY WHEN MY SUNROOF EXPLODED, GLASS SHATTERING EVERYWHERE. GLASS HIT MY FACE AND WENT DOWN MY BACK AND CUT MY HANDS. I DIDN'T CRASH THE CAR NOR WAS ANY OTHER DAMAGE DONE THAN THE SUNROOF. I PULLED OVER WHEN IT WAS SAFE TO INSPECT THE VEHICLE AND NO OBJECT HAD CAME THROUGH THE SUNROOF. THE FRONT OF THE SUNROOF WAS INDENTED INWARD AND GLASS WAS ANGLED OUTWARD AS IF IT HAD EXPLODED FROM THE INSIDE OUT. I RESEARCHED ONLINE TO FIND THAT THERE WAS A RECALL FOR |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | 760,000 MERCEDES BENZ YEARS 2001-2011 FOR DEFECTIVE SUNROOF. " |
| 11 | 4/2/2020 | 4/1/2020 | 2013 | ML350 | 11320006 | "ON MARCH 8 2020 I WAS DRIVING MY 2014 MERCEDES BENZ CLS550 STRAIGHT ON THE FREEWAY WHEN MY SUNROOF EXPLODED, GLASS SHATTERING EVERYWHERE. GLASS HIT MY FACE AND WENT DOWN MY BACK AND CUT MY HANDS. I DIDN'T CRASH THE CAR NOR WAS ANY OTHER DAMAGE DONE THAN THE SUNROOF. I PULLED OVER WHEN IT WAS SAFE TO INSPECT THE VEHICLE AND NO OBJECT HAD CAME THROUGH THE SUNROOF. THE FRONT OF THE SUNROOF WAS INDENTED INWARD AND GLASS WAS ANGLED OUTWARD AS IF IT HAD EXPLODED FROM THE INSIDE OUT. I RESEARCHED ONLINE TO FIND THAT THERE WAS A RECALL FOR 760,000 MERCEDES BENZ YEARS 2001-2011 FOR DEFECTIVE SUNROOF." |
| 12 | 3/30/2020 | 3/30/2020 | 2018 | GLE350 | 11319701 | "THE CONTACT OWNS A 2018 MERCEDES BENZ GLE350. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 70 |

| | | | | | | MPH, THE SUNROOF SHATTERED WITHOUT IMPACT." |
|---|---|---|---|---|---|---|
| 13 | 3/17/2020 | 3/7/2020 | 2016 | GLE350 | 1131850 3 | "PANORAMIC SUNROOF SPONTANEOUSLY "EXPLODED" WHILE DRIVING 60MPH ON THE FREEWAY. IT WAS A CLEAR, SUNNY MORNING WITH TEMPERATURES IN THE LOW 70'S. I WAS NOT NEAR AN UNDERPASS, NOR BEHIND ANOTHER VEHICLE. IT SOUNDED AS IF A CANNON WENT OFF INSIDE THE VEHICLE, FORTUNATELY THE SUN SCREEN WAS CLOSED OR I WOULD HAVE BEEN SHOWERED IN GLASS. MORE FORTUNATELY, I WAS ABLE TO PULL OVER SAFELY. THIS SUDDEN EXPLOSION COULD HAVE EASILY CAUSED ME TO VEER OFF THE ROAD OR INTO ANOTHER VEHICLE. THE GLASS APPEARED TO EXPLODE "UPWARD"." |
| 14 | 2/23/2020 | 2/13/2020 | 2015 | C300 | 1131098 8 | "I WAS DRIVING ON 02/13/2020, ABOUT TO CROSS THE ARKANSAS/TENNESSEE BRIDGE WHEN MY SUNROOF EXPLODED WITHOUT AN EXPLANATION. THE ENTIRE PANORAMIC SUNROOF SHATTERED. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | IT WAS THE MOST FRIGHTENING THING I HAVE EVER EXPERIENCE. IF MY SUNROOF SCREEN HAD BEEN OPEN, ALL OF THE GLASS WOULD HAVE FALLEN ON MY HEAD AND IN MY EYES." |
| 15 | 1/27/2020 | 1/24/2020 | 2017 | GLE350 | 11302179 | "SHATTERED PANORAMIC SUNROOF" |
| 16 | 1/6/2020 | 10/23/2019 | 2017 | C300 | 11297509 | "IN LATE OCTOBER 2019, I WAS DRIVING ON THE FREEWAY AT 70 MPH. MY PANORAMIC SUNROOF SUDDENLY BLOW UP WITH A LOUD SOUND" |
| 17 | 12/27/2019 | 12/26/2019 | 2019 | C300 | 11291475 | "THE PANORAMA SUNROOF EXPLODED, NO OTHER CARS NEAR ME, NO ROCK HIT IT NO BIG BUMP IN THE ROAD, IT JUST EXPLODED...WAS TRAVELING AT NORMAL HIGHWAY SPEED, AND IT SOUNDED LIKE THE CAR HAD EXPLODED, VERY SCARY, AND IF THE INSIDE COVER HAD NOT BEEN CLOSED WOULD HAVE HAD GLASS SHARDS RAIN DOWN ON ME AND POSSIBLE GET IN MY EYES" |
| 18 | 7/20/2019 | 7/19/2019 | 2018 | GLC300 | 1123353 | "WHILE DRIVING ON THE HIGHWAY MY |

| | | | | | 4 | SUNROOF SUDDENLY EXPLODED." |
|---|---|---|---|---|---|---|
| 19 | 6/20/2019 | 6/19/2019 | 2016 | S550 | 1122136<br><br>6 | "I WAS DRIVING ON THE HIGHWAY ON MY WAY TO PHOENIX AZ TO DROP OFF MY MOM AND GRANDMA WHEN SUDDENLY THE SUNROOF EXPLODED. IT SOUNDED LIKE A GUN SHOT. THERE WASN'T ANY TYPE OF OBJECT NEAR ME TO CAUSE IT. IT WAS VERY RANDOM. THIS DISTURBED MY FAMILY MENTALLY SCARING THEM AND I SWERVED OFF THE HIGHWAY ALMOST CRASHING." |
| 20 | 5/22/2019 | 5/19/2019 | 2017 | E300 | 1120932<br><br>8 | "THIS SUNDAY, MY BROTHER IN LAW WAS DRIVING THE CAR AND I WAS SITTING I. PASSENGER SEAT AND MY 5 YEAR OLD NIECE IN THE BACKSEAT. SUDDENLY, THERE WAS A LOUD POP SOUND AND AFTER FEW SECONDS THE GLASS STARTED FALLING IN THE CAR FROM ABOVE, WE FOUND OUT THAT THE SUNROOF GLASS SHATTERED FOR NO REASON, NOTHING HIT THE CAR, NO POTHOLES, NOTHING AT ALL. MY BRO IN LAW DID GET HURT ON ON ARM AS A |

| | | | | | | SMALL PIECE OF GLASS HIT HIM." |
|---|---|---|---|---|---|---|
| 21 | 5/6/2019 | 5/1/2019 | 2014 | C250 | 11205673 | "CAR WAS BEING DRIVEN AT APPROXIMATELY 60 MPH ON THE COURTNEY CAMPBELL CAUSEWAY HIGHWAY, ON A STRAIGHTAWAY, THAT CONNECTS CLEARWATER TO TAMPA, FLORIDA. SUDDENLY THE (CLOSED) SUNROOF SPONTANEOUSLY EXPLODED, CAUSING A VERY LOUD NOISE AND SHATTERED GLASS TO FALL DOWN INTO THE PASSENGER COMPARTMENT. MY WIFE, WHO WAS DRIVING MANAGED TO MAINTAIN CONTROL OF THE CAR AND PULL TO THE SIDE OF THE ROAD. GIVEN THE CAR'S SPEED AND SURROUNDING TRAFFIC (MORNING RUSH HOUR) IT IS UNBELIEVABLE THAT THE SUNROOF EXPLOSION DID NOT CAUSE AN ACCIDENT." |
| 22 | 4/30/2019 | 4/30/2019 | 2013 | E63 | 11204889 | "I WAS DRIVING HOME AFTER WORK DURING RUSH HOUR TRAFFIC ONE AFTERNOON AND ALL OF A SUDDEN I HEARD A LOUD BANG I PULLED OVER TO SEE IF A ROCK OR ROAD |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | DEBRIS HAD HIT MY CAR. I COULD NOT FIND ANY SIGNS OF IMPACT. LATER ON I NOTICED THAT THE PANORAMIC ROOF SECTION BETWEEN THE WINDSHIELD AND SUNROOF HAD SHATTERED THERE" |
| 23 | 3/5/2019 | 3/3/2019 | 2014 | GL450 | 1118427 0 | "SUNROOF EXPLODED AS I WAS DRIVING DOWN THE FREEWAY. ROADWAY WAS SMOOTH AND THERE WERE NO CARS IN FRONT OF ME SO IM CERTAIN IT WASN'T A ROCK OR OTHER OBJECT THAT BROKE IT." |
| 24 | 2/9/2019 | 2/8/2019 | 2016 | GLE350 | 1117583 4 | "SHATTERING/EXPLODI NG SUNROOF" |
| 25 | 1/2/2019 | 1/2/2019 | 2013 | GL450 | 1116449 6 | "AT 9:22AM ON THE MORNING OF JANUARY 2, 2019, MY SUV WAS PARKED IN MY DRIVEWAY. IT WAS OVERCAST, CALM CONDITIONS, AND AROUND 52°. I UNLOCKED MY VEHICLE, GOT IN, STARTED THE ENGINE, AND CLOSED THE DRIVER'S DOOR NORMALLY. ONE SECOND LATER, I HEARD AN EXPLOSION AS THE SUNROOF |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | EXPLODED. THERE WAS NO EVIDENCE OF ANYTHING HAVEN FALLEN ON THE VEHICLE NOR ANY EVIDENCE THAT ANYONE HAD TAMPERED WITH MY SUV. I HAD LAST DRIVEN THE VEHICLE THE AFTERNOON OF DECEMBER 31, 2018 IN CONDITIONS SIMILAR TO THOSE DESCRIBED ABOVE. I HAVE NO RECOLLECTION OF MY VEHICLE BEING STRUCK BY ANY OBJECTS IN RECENT YEARS. THIS WAS A SUDDEN AND VERY UNEXPECTED OCCURRENCE." |
| 26 | 12/31/2018 | 12/31/2018 | 2015 | C300 | 11164236 | "PANORAMIC SUNROOF SPONTANEOUSLY EXPLODED WHILE THE CAR WAS SITTING. MERCEDES CLAIMING SOMETHING FELL INTO IT, BUT THERE WAS NOTHING ABOVE IT OR IN THE CAR WHILE IT WAS SITTING IN THE GARAGE." |
| 27 | 12/21/2018 | 12/21/2018 | 2018 | GLC300 | 11163043 | "WAS DRIVING DOWN HIGHWAY DURING CLEAR SUNNY DAY ON 12/21/18 AT ABOUT 2:30 PM ON I-10 EAST JUST OUTSIDE OF HOUSTON WHEN MY SUNROOF SUDDENLY EXPLODED OUTWARD. NO SIGNS OF |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | ANY DEBRIS BEING FLUNG UP OR STRIKING SUNROOF AND THERE WERE NO VEHICLES CLOSE TO US AT THE TIME." |
| 28 | 12/10/2018 | 11/15/201 8 | 2017 | CLA250 | 1115726 4 | "I WAS DRIVING ON THE TOLL ROAD WHEN OUT OF NO WHERE I HERE A LOUD BOOM AND CRACKLE ABOVE MY HEAD. ALMOST LIKE A FIREWORK WHEN IT GOES OFF. I THOUGHT IT WAS A GUN SHOT. WHEN I LOOKED UP MY PANORAMIC SUNROOF WAS GONE. NOTHING WAS DRIVING IN FRONT OF OR BESIDE ME. NOTHING HIT MY CAR." |
| 29 | 11/29/2018 | 11/17/201 8 | 2018 | GLS550 | 1115478 5 | "WAS DRIVING IN A RURAL AREA WHEN ALL OF A SUDDEN I HEARD WHAT SOUNDED LIKE AN EXPLOSION. MY FIRST INSTINCT WAS THAT I HAD BLOWN A TIRE BECAUSE IT WAS SO LOUD. HOWEVER, THE CAR WAS HANDLING FINE AND NO WARNING MESSAGES CAME ON. MY HUSBAND AND I BOTH SAID "WHAT WAS THAT?" EVERYTHING ON SEEMED FINE MECHANICALLY SO WE KEPT DRIVING, BUT A BIT SHAKEN BY THE SUDDEN LOUD NOISE. I |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | FEW HOURS LATER WE STOPPED FOR GAS. AS MY HUSBAND WENT TO CLEAN THE WINDSHIELD HE NOTICED THE SHATTER OF THE GLASS ROOF PANEL." |
| 30 | 11/3/2018 | 11/2/2018 | 2016 | C350E | 1114506 6 | "PANORAMIC SUNROOF SHATTERED WHILE DRIVING NORMALLY IN HIGHWAY, SHARDS OF GLASS FROM THE SUNROOF ALSO DAMAGED/CHIPPED REAR PART OF THE CAR. CAUSE UNKNOWN." |
| 31 | 9/25/2018 | 9/24/2018 | 2014 | CLA250 | 1113112 1 | "DRIVING HOME FROM WORK YESTERDAY ON THE HIGHWAY AND THE PANORAMIC SUNROOF SPONTANEOUSLY SHATTERED, CAUSING ME TO SWERVE AND ALMOST RUN OFF THE SIDE OF A CLIFF." |
| 32 | 6/12/2018 | 6/11/2018 | 2014 | C250 | 1110147 0 | "I WAS DRIVING ON THE FREEWAY AT AROUND 9AM CST HEADED TO DFW AIRPORT WHEN ALL OF A SUDDEN I JUST HEARD A LOUD BANG. I IMMEDIATELY FELT PRESSURE IN MY EARS AND IT NOW FELT LIKE THERE WAS A WINDOW OPEN. HAVING PULLED OUT TO A SAFE SPOT ON THE SIDE OF THE FREEWAY TO |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | INSPECT THE VEHICLE, I WAS SHOCKED TO SEE THE SUNROOF GLASS IS WHAT HAD EXPLODED." |
| 33 | 6/12/2018 | 6/11/2018 | 2014 | C250 | 1110147 0 | "I WAS DRIVING ON THE FREEWAY AT AROUND 9AM CST HEADED TO DFW AIRPORT WHEN ALL OF A SUDDEN I JUST HEARD A LOUD BANG. I IMMEDIATELY FELT PRESSURE IN MY EARS AND IT NOW FELT LIKE THERE WAS A WINDOW OPEN. HAVING PULLED OUT TO A SAFE SPOT ON THE SIDE OF THE FREEWAY TO INSPECT THE VEHICLE, I WAS SHOCKED TO SEE THE SUNROOF GLASS IS WHAT HAD EXPLODED." |
| 34 | 5/28/2018 | 5/25/2018 | 2013 | C250 | 1109829 2 | "SUNROOF EXPLODES AND SHATTERS FOR NO APPARENT REASON WHILE DRIVING STRAIGHT ON THE HIGHWAY." |
| 35 | 5/18/2018 | 5/11/2018 | 2014 | CLA250 | 1109676 0 | "I WAS DRIVING MY CAR ON LOCAL STREETS, SUDDENLY I HEARD A CRACKING NOISE FROM THE SUNROOF. AFTER THAT I PULLED MY CAR ASIDE AND NOTICE THAT THERE WAS A SMALL CRACK ON THE SUNROOF. . . THERE WAS NO FALLING FOREIGN OBJECTS, NO |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | IMPACT FROM THE WEATHER. I HAVE NO CLUE WHAT IS THE CAUSE OF THE DAY CRACK. MY FIRST REACTION WAS TO CALL THE INSURANCE COMPANY AND FIND A PARKING LOT TO STORE THE CAR. AFTER I CONTACTED THE INSURANCE COMPANY AND I WAS ON MY WAY TO THE PARKING LOT, THE SUNROOF SHATTERED COMPLETELY. SOME OF THE GLASS PIECE EVEN FELL AND CAUSED INJURY TO MY WIFE." |
| 36 | 5/2/2018 | 5/2/2018 | 2016 | GL450 | 1109130 9 | "THE SUNROOF IN THIS VEHICLE SHATTERED OVERNIGHT WITHOUT ANY KNOWN CAUSE…. WE TOOK THE VEHICLE TO THE MERCEDES BENZ DEALERSHIP AND THE REPRESENTATIVE THERE SAID HE HAD NEVER HEARD OF THIS HAPPENING; HOWEVER, THERE ARE MANY INCIDENTS REPORTED ON THE INTERNET OF THIS EXACT SAME ISSUE. I HOPE YOU CAN FORCE THEM TO LOOK INTO THIS ISSUE FOR SAFETY REASONS AND ALSO FOR THE MONETARY EXPENSE TO THE CONSUMER. IT SHOULD BE A |

| | | | | | | WARRANTY REPAIR ITEM." |
|---|---|---|---|---|---|---|
| 37 | 4/30//2018 | 4/28/2018 | 2014 | ML350 | 11091112 | "SUNROOF EXPLODING - WAS DRIVING ON THE FREEWAY AT AROUND 70MPH WHEN I HEARD A LOUD BANG. I COULD TELL IT CAME FROM ABOVE AND COULD TELL THE SUNROOF HAD SHATTERED….IT HAPPENED SUDDENLY WITHOUT ANY WARNING….THERE WAS NO IMPACT FROM ANYTHING." |
| 38 | 3/27/2018 | 3/26/2018 | 2009 | R350 | 11081564 | "WHILE DRIVING AT 60 MPH, THE CONTACT HEARD SOMETHING LIKE A LOUD POPPING SOUND. AT THAT POINT, THE CONTACT REALIZED THAT THE SUNROOF HAD EXPLODED WITHOUT IMPACT. THE CONTACT STATED THAT THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE THE TECHNICIAN INFORMED THE CONTACT THE FAILURE HAD NEVER BEEN SEEN BEFORE. THE DEALER WAS NOT CONTACTED AND MADE AWARE OF THIS FAILURE…." |
| 39 | 2/6/2018 | 2/5/2018 | 2017 | GLC300 | 11067206 | "EXPLODING PANORAMIC SUNROOF: WHILE DRIVING ABOUT |

| | | | | | | 40MPH ON ROUTE 35SOUTH (MIDDLETOWN, NJ) IN 30 DEGREE WEATHER AT 7:30PM ON 5FEB2018 THE FORWARD PANEL OF THE PANORAMIC SUNROOF EXPLODED. THERE WERE NO OTHER CARS AROUND ME. IT WAS A LOUD POP EXPLOSION. THE SAFETY GLASS LOOKS PUSHED OUT AND GLASS STARTED TO FLY BEHIND THE CAR ONTO THE ROAD." |
|---|---|---|---|---|---|---|
| 40 | 2/6/2018 | 2/3/2018 | 2014 | CLA250 | 1106717 4 | "MY SUNROOF EXPLODED CAUSING SHARDS OF GLASS TO FLY INTO MY CAR. I HAD MINOR CUTS ON MY LOWER BACK AND ARM FROM THE GLASS COVERING ME WHILE DRIVING. I WAS ABLE TO SAFELY PULL OVER TO ASSESS WHAT HAPPEN BECAUSE MY INITIAL THOUGHT WAS THAT SOMEONE WAS SHOOTING AT ME." |
| 41 | 2/2/2018 | 1/21/2018 | 2013 | GLK250 | 1106670 2 | "DRIVING 45-50 MPH ON THE ROAD ALONE AND AM STARTLED BY LOUD NOISE WHICH RESEMBLED A GUNSHOT…I LOOKED UP AND NOTICED MY PANORAMIC SUNROOF WHAT SHATTERED IN TINY PIECES. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | DEALERSHIP STATED THAT 'NO OUTSIDE SOURCE FOUND CAUSING DAMAGE' TO THE SUNROOF. CAR IS UNDER AND EXTENDED WARRANTY AND MANUFACTURE HAS REFUSED TO TAKE RESPONSIBILITY FOR THE ISSUE." |
| 42 | 1/27/2018 | 1/26/2018 | 2010 | E350 | 11065391 | "I WAS DRIVING…AT HIGHWAY SPEEDS, WHEN OUT OF NOWHERE THE SUNROOF JUST SHATTERS INTO PIECES. THERE WAS NO LARGE OBJECT THAT CAME TOWARDS ME…. I…CALLED THE TOLL ROAD AUTHORITY. THEY SUMMONED AN OFFICER TO HELP ME. THE OFFICER SEARCHED THE AREA OF THE FREEWAY FOR ANY OBJECT THAT COULD HAVE CAUSED THIS, AND FOUND NOTHING. AT CLOSER INSPECTION HE AND I NOTICED THAT GLASS BOWED OUTWARD AND NO MAJOR BODY DAMAGE BEHIND THE SUNROOF INDICATED THAT NO OBJECT CAUSED THIS. I THEN WENT TO THE DEALERSHIP AND TOLD THEM ABOUT THIS SPONTANEOUS SHATTERING ONLY TO |

| | | | | | BE TOLD THAT IT'S IMPOSSIBLE FOR SOMETHING LIKE THIS TO HAPPEN ON ITS OWN. I WAS TOLD PERHAPS IT'S A 'PEBBLE'…. I AM CONVINCED THAT THIS SHATTERED...IN FACT EXPLODED (THAT'S HOW IT SOUNDED) BY ITSELF AND WAS A DEFECTIVE GLASS….." |
|---|---|---|---|---|---|---|
| 43 | 1/13/2018 | 11/15/2017 | 2007 | R320 | 11062610 | "PANORAMA SUNROOF EXPLODED WHILE PARKED IN OUR GARAGE." |
| 44 | 1/12/2018 | 12/18/2017 | 2016 | GLE400 | 11062371 | "WHILE DRIVING...AT HIGHWAY SPEEDS THE PANORAMIC SUNROOF SPONTANEOUSLY SHATTERED COVERING MY WIFE WITH GLASS AND ALMOST CAUSING HER TO LOSE CONTROL." |
| 45 | 12/31/2017 | 12/16/2017 | 2012 | GLK350 | 11057781 | "I WAS DRIVING…WHEN I HEARD A LOUD POP….THE WHOLE FRONT PANEL SUNROOF NOW LOOKED LIKE CRACKLE GLASS. WHEN I GOT HOME I LOOKED TO SEE IF SOMETHING HAD HIT THE SUNROOF BUT NOTHING HAD. WHEN I CONTACTED MY MERECEDES DEALERSHIP THEY WOULD NOT ACKNOWLEDGE THERE WAS A PROBLEM EVEN |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | THOUGH I HAD TOLD THEM WHAT THE MERCEDES BLOGS WERE SAYING. I HAD THE DEALERSHIP REPLACE THE SUNROOF THE PANEL COST $1131.20 PLUS LABOR $402.50." |
| 46 | 12/28/2017 | 12/20/2017 | 2016 | GLE450 | 11057226 | "MY SUNROOF EXPLODED SPONTANEOUSLY WHILE I WAS DRIVING. THERE WAS NO SIGNS OF DAMAGE TO THE GLASS. THE GLASS FLEW BACK ON ROAD AND THE GLASS REMAINING ON TOO APPEARED BOWED." |
| 47 | 12/28/2017 | 12/24/2017 | 2016 | CLA250 | 11057168 | "THE SUNROOF SPONTANEOUSLY EXPLODED WITH A LARGE NOISE RAINING GLASS DOWN ON US. THERE WERE NO CARS AROUND, NO OBJECTS HIT THE SUNROOF. WE WERE DRIVING AT NORMAL SPEED ON THE HIGHWAY. THIS ISSUE IS VERY DANGEROUS BECAUSE IT WAS STARTLING LIKE AN EXPLOSION AND COULD HAVE CAUSED LOSS OF CONTROL. THE CAR HAD VERY LOW MILEAGE WAS PRACTICALLY BRAND NEW IN PERFECT CONDITION." |

| 48 | 12/27/2017 | 8/2/2017 | 2016 | GLC300 | 11056986 | "PANORAMIC SUNROOF SHATTERED AND EXPLODED WITHOUT WARNING, WITHOUT ANY EXTERNAL IMPACT SEEN, FELT OR HEARD. VEHICLE WAS MOVING ON RURAL HIGHWAY (FLAT FARMLAND) AROUND 55-60 MPH. EXTERNAL TEMPERATURE ABOVE 100 DEGREES. HIGHWAY TRAFFIC NORMAL, NOT DENSE OR EMPTY. ODOMETER AT 12,000 MILES. HAZARD DUE TO DEFECTIVE/ INSUFFICIENTLY STRONG SUNROOF GLASS." |
| 49 | 11/21/2017 | 11/10/2017 | 2016 | C300 | 11047852 | "I WAS DRIVING DOWN THE FREEWAY AT APPROXIMATELY 65 MPH AND THE PANORAMIC SUNROOF…EXPLODED. I SAY 'EXPLODED' BECAUSE NOTHING STRUCK THE GLASS AND MOST OF THE GLASS BLEW OUT AND OFF THE CAR, NOT IN….YOU CAN EVEN SEE WHERE THE GLASS REMAINING IS STICKING UP, NOT DOWN. THE SHADE WAS OPEN SO GLASS DID FALL INTO MY CAR, CUTTING MY ARM. IF KIDS OR OTHERS WERE IN THE |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | CAR, IT WOULD LIKELY HAVE CUT THEM OR COULD HAVE RESULTED IN GLASS DUST IN THEIR EYES, ETC. IT ALSO COULD HAVE CAUSED AN ACCIDENT BY SCARING ME BUT ALSO SINCE MUCH OF IT BLEW OFF MY CAR, IT PUT THE CARS BEHIND ME IN DANGER AND COULD HAVE CAUSED THEM TO CRASH. MERCEDES HAS NOT TAKEN RESPONSIBILITY OF THIS YET, BUT I HAVE BROUGHT THIS TO THEIR ATTENTION. THE VEHICLE WAS ONLY A LITTLE OVER 1 YEAR OLD AND ONLY ABOUT 17,000 MILES ON IT. NO WAY SHOULD THIS HAVE HAPPENED…." |
| 50 | 11/5/2017 | 11/5/2017 | 2007 | R320 | 11043585 | "SUNROOF EXPLODED WHILE PARKED IN GARAGE." |
| 51 | 11/5/2017 | 10/17/2017 | 2017 | GLC300 | 11043584 | "WHILE DRIVING…THE SUNROOF EXPLODED…MY CONCERN IS HOW THE SUNROOF SHATTERED AND THE QUALITY OF THE MATERIAL/GLASS USED. WHAT TYPE OF GLASS IS USED IN THIS VEHICLE FOR IT TO SHATTER AS IT DID? IS THIS PERHAPS A SIGN OF CHEAPER MATERIAL |

| | | | | | | BEING USED ON THE SUNROOF…." |
|---|---|---|---|---|---|---|
| 52 | 10/31/2017 | 10/29/2017 | 2017 | CLA250 | 11041759 | "SUNROOF EXPLODED WHILE DRIVING DOWN THE ROAD AT APPROXIMATELY 30 MPH. NOT NEAR ANY OVERPASSES OR OTHER VEHICLES." |
| 53 | 10/28/2017 | 10/9/2017 | 2017 | E300 | 11040697 | "PANORAMIC SUNROOF SPONTANEOUSLY EXPLODED WHILE DRIVING ON FREEWAY." |
| 54 | 10/16/2017 | 10/14/2017 | 2017 | GLC300 | 11033826 | "WHILE DRIVING…WE HEARD A LOUD BAM, A MOMENT LATER HEARD CRACKING THEN SHATTERED GLASS FROM MY SUNROOF FELL INTO THE CAR…." |
| 55 | 8/31/2017 | 8/29/2017 | 2013 | C300 | 11020997 | "…LESS THAN A HALF A MILE FROM ENTERING THE HIGHWAY MY SUNROOF EXPLODED. THERE WERE NO CARS NEAR ME AND NO DEBRIS NEAR MY CAR. I CONTACTED MERCEDES BENZ AND THEY SEEM VERY UNCONCERNED. WHEN THIS OCCURRED GLASS WENT EVERYWHERE, ALL OVER ME AND BOTH THE FRONT AND BACK SETS. I WAS DRIVING AT A SPEED OF 60 MILES AND HOUR. AFTER GAINING CONTROL OF THE CAR I GOT OUT AND CALLED THE |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | POLICE AND MY INSURANCE COMPANY. THIS WAS A TERRIFYING EXPERIENCE." |
| 56 | 7/11/2017 | 6/27/2017 | 2015 | GLA250 | 1100429 6 | "I WAS DRIVING AT 45MPH DURING DAY TIME, IN NORMAL SLOW-TRAFFIC CONDITIONS…, WHEN MY PANORAMIC SUNROOF EXPLODED. OUTSIDE TEMPERATURE WAS 66F, I WAS NOT DRIVING UNDER A BRIDGE AND I DIDN'T HEAR ANY NOISE OF IMPACT GENERATED BY A FOREIGN OBJECT. AT THE TIME OF THE EXPLOSION I WAS PASSING A TRUCK AND BY THE SOUND OF IT, I IMMEDIATELY THOUGHT THAT ONE OF THE TRUCK'S TIRES EXPLODED. INSTEAD I LOOKED UP AND MY ENTIRE PANORAMIC SUNROOF WAS IN PIECES. LUCKILY THE SUNSHADE LINING WAS CLOSED AND IT PROTECTED MY FACE FROM BEING EXPOSED TO THE PIECES OF BROKEN GLASS." |
| 57 | 4/3/2017 | 4/3/2017 | 2015 | C300 | 1097034 7 | "MY SUNROOF EXPLODED/SHATTERED WHILE I WAS DRIVING TODAY, TRAVELING AT A SPEED OF 45MPH ON |

| | | | | | | CITY ROAD AFTER TURNING A CORNER. OUTSIDE TEMP WAS AROUND 85 AND INSIDE CAR WAS 75. CAR HAS AROUND 6800 MILES, AND THERE WAS NOTHING THAT HIT THE SUNROOF. SCARY SITUATION FOR THE DRIVER! CAR IS CURRENTLY UNDER WARRANTY AND AT THE DEALER FOR REPAIR, BUT THEY WANT MY INSURANCE TO PAY. I INSIST THIS BE INVESTIGATED BECAUSE I BELIEVE IT TO BE A MANUFACTURE DEFECT" |
|---|---|---|---|---|---|---|
| 58 | 2/13/2017 | 2/10/2017 | 2016 | GLA250 | 1095427 9 | "DRIVING 70 MPH ON HIGHWAY, 12K MILES ON MY 2016 CAR AND THE SUNROOF EXPLODED OUT THE TOP OF MY CAR. SOUNDED LIKE A SHOTGUN BLAST, SHREDS OF GLASS EVERYWHERE. NO WARNINGS, SOUNDS, ANY IDEA ABOUT TO OCCUR." |
| 59 | 2/6/2017 | 2/5/2017 | 2017 | GLC | 1094994 6 | "ALL OF A SUDDEN, THERE WAS A LOUD NOISE LIKE A GUNSHOT AND OUR PANARAMIC SUNROOF SHATTERED. AT THE TIME, WE HAD A CARGO BOX ON TOP OF THE CAR (ON A FRAME |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | THAT WAS NOT TOUCHING THE SUNROOF) SO IT IS UNLIKELY ANY PROJECTILE COULD HAVE HIT THE CAR." |
| 60 | 2/3/2017 | 2/3/2017 | 2009 | GL450 | 10949492 | "I WAS DRIVING ON MY WAY HOME FROM WORK TODAY…MERGING ONTO HIGHWAY WHEN I HEARD A LOUD EXPLOSION. I THEN SAW THAT MY SUNROOF HAD SHATTERED AND WAS BOWED OUT. THERE IS A LARGE HOLE IN THE CENTER OF THE SUNROOF AND THE REST OF THE GLASS IS SPIDERWEBBED. NOTHING HAD HIT MY CAR OR MY SUNROOF. I WAS ONLY GOING ABOUT 15 MPH…. IT WAS VERY SCARY AND DANGEROUS. I CALLED MERCEDES WHO IS NO HELP. THEY NEED TO RECALL THIS OR BE HELD RESPONSIBLE. THIS COULD HAVE CAUSED ME TO CRASH OR IF MY SUNROOF COVER WAS OPENED I WOULD HAVE BEEN SHOWERED IN GLASS." |
| 61 | 1/30/2017 | 1/30/2017 | 2014 | GL450 | 10948508 | "WHILE DRIVING ON THE FREEWAY AT ABOUT 70 MPH THE SUNROOF EXPLODED. WE WERE NOT BEHIND |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | ANOTHER CAR AND DRIVING IN THE MIDDLE OF AN UNPOPULATED AREA ALONG THE !-10 FREEWAY. *TR" |
| 62 | 1/1/2017 | 12/31/2016 | 2017 | E300 | 10938962 | "THE SUNROOF…JUST SPONTANEOUSLY SHATTERED WHILE DRIVING. I WAS DRIVING STRAIGHT AHEAD AROUND 50 MPH ON A HIGHWAY ON A RAINY DAY, WITH NO ONE IMMEDIATELY IN FRONT OF ME WHEN I HEAR A LOUD NOISE THAT STARTLED ME. I DIDN'T KNOW WHAT HAD HAPPENED UNTIL I HEARD WIND NOISE FROM OUTSIDE AND REALIZED THE SUNROOF HAD SHATTERED. ONCE I WAS ABLE TO SAFELY PULL OVER, I REALIZED THAT THE THERE WAS A HUGE HOLE IN MY SUNROOF AND IT SEEMED TO HAVE ORIGINATE FROM INSIDE, AS THE GLASS WAS PUSHED OUTWARD. WITH NO CARS IN FRONT OF ME, DRIVING ON A STRETCH OF HIGHWAY WITH NO OVERPASS, I SUSPECT THAT THE GLASS OR CAR HAD A DEFECT AND SHATTERED ON ITS OWN. IT WAS A SCARY |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | INCIDENT THAT COULD HAVE BEEN MUCH WORSE. FORTUNATELY, NO ONE WAS INJURED. THE CAUSE FOR THE INCIDENT IS UNKNOWN SINCE THERE WERE NO ROCKS OR OTHER FOREIGN OBJECT THAT WAS NEAR THAT COULD HAVE SPECIFICALLY HIT THE SUNROOF WITH DOING NO OTHER DAMAGE TO THE VEHICLE. *TR" |
| 63 | 12/11/2016 | 12/9/2016 | 2017 | C300 | 10934527 | "SUNROOF EXPLOSION TOOK PLACE IN TRANSIT TO DELIVERY TO MY HOME…. IT WAS STATIONARY INSIDE OF ENCLOSED TRANSIT VEHICLE." |
| 64 | 10/27/2016 | 10/26/2016 | 2013 | C300 | 10919684 | "DRIVING HOME…. VERY LOUD NOISE LIKE A SMALL EXPLOSION. THE FRONT PART OF THE PANORAMIC SUNROOF EXPLODED! THERE WERE NO OVER PASSES OR CARS NEARBY. NO OTHER APPARENT DAMAGE ANYWHERE. OUTSIDE/EXTERIOR SUNROOF LOOKED FINE (SEE PHOTOS). IT WAS RAINING AT THE TIME. THE SUNROOF, ALTHOUGH SHATTERED, DID REMAIN INTACT, HOWEVER STARTED |

| | | | | | | LEAKING. THIS APPEARS TO BE A VERY COMMON PROBLEM (DO ANY TYPE OF INTERNET SEARCH ON PANORAMIC SUNROOF EXPLODING). PLEASE INVESTIGATE. *TR" |
|---|---|---|---|---|---|---|
| 65 | 10/7/2016 | 6/15/2016 | 2015 | C300 | 10914426 | ".... WHILE DRIVING AT 55 MPH, THE GLASS IN THE SUNROOF COLLAPSED WITHOUT IMPACT. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE SUNROOF WAS REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 21,000." |
| 66 | 9/27/2016 | 9/27/2016 | 2015 | ML350 | 10910097 | "SUNROOF WAS FOUND SHATTERED AFTER THE VEHICLE WAS PARKED ON A RESIDENTIAL STREET. NO EVIDENCE OF VANDALISM. FOUND OUT AFTER OPENING THE DOOR & CLOSING IT - HEARD THE SHATTERED GLASS FALL ONTO THE INTERIOR SUNROOF VISOR. NO VISIBLE DAMAGE THAT MIGHT INDICATE THE CAUSE OF THE SHATTERED GLASS. THE FOUR CORNERS OF THE SUNROOF WERE SUNKEN IN SLIGHTLY, AND THE MIDDLE |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | PORTION FLEXED UPWARD. THERE HAS BEEN NO RECENT EXTREME HEAT RECENTLY." |
| 67 | 7/27/2016 | 7/27/2016 | 2008 | C300 | 1088914 4 | "I WAS DRIVING ON A STRAIGHT HIGHWAY AT APPROXIMATELY 70MPH WHEN, ALL OF A SUDDEN, I HEARD A LOUD EXPLOSION. A FEW SECONDS LATER, I FELT THE CAR PULLING SLIGHTLY TO THE RIGHT. A FEW GLASS FRAGMENTS THEN STARTED TO COME THROUGH THE SUNROOF COVER AND THIS IS WHEN I SURMISED THAT THE SUNROOF HAD SHATTERED UNEXPECTEDLY…. WHEN I GOT HOME, I NOTICED THAT THE SUNROOF HAD EXPLODED OUTWARDLY. I CAN EASILY IMAGINE SOMEONE SWERVING DUE TO THE SHOCKED OF THE LOUD EXPLOSION AND CAUSING AN ACCIDENT." |
| 68 | 7/27/2016 | 6/6/2016 | 2014 | GLK250 | 1088908 5 | "'SPONTANEOUS SUNROOF EXPLOSION'…EXPERIEN CED A SPONTANEOUS SUNROOF EXPLOSION WHILE DRIVING ON THE |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | HIGHWAY AT HIGHWAY SPEEDS. AN ACCIDENT NEARLY OCCURRED AS A RESULT OF THE GUNSHOT LIKE IMPACT EXPERIENCED INSIDE THE CABIN OF THE VEHICLE AS A RESULT OF THE SUNROOF EXPLOSION. I HAD SEVERAL CHARDS OF GLASS EMBED IN MY SKIN AND IN MY EYE, AS THE EXPLOSION PRODUCED AN ULTRA FINE DUST OF SAFETY GLASS PARTICLES THAT WERE UNAVOIDABLE. NO IMPACT DEBRIS OR FOREIGN OBJECT WAS ATTRIBUTABLE TO THE CAUSE OF THE EXPLOSION, HINTING AT MANUFACTURER DEFECT." |
| 69 | 7/20/2016 | 7/20/2016 | 2014 | C250 | 10886109 | "I WAS EXITING THE INTERSTATE AND…I HEAR A LOUD POP AND SEE THAT MY SUNROOF HAS SHATTERED. IT REMAINED INTACT AND DID NOT SHOWER ME WITH GLASS BUT IT IS CRACKED AND BOWED IT ON ALL CORNERS AND IS BOWED UP IN THE CENTER OF THE GLASS." |
| 70 | 6/14/2016 | 06/10/2016 | 2016 | GLC300 | 10874285 | "AT 7:30 AM ON…, WHILE DRIVING…IN OUR 5-MONTH-OLD MB - GLC 300, THE PANORAMIC SUNROOF |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | SUDDENLY AND WITHOUT ANY WARNING EXPLODED AND SHATTERED OUTWARD. THE SOUND WAS AS LOUD AS A BOMB. AS SHOWN IN THE PHOTOGRAPHS, NEARLY ALL THE SUNROOF WAS BLOWN OUT, WITH ONLY A LITTLE GLASS REMAINING AROUND THE FRAME. THE SHATTERED GLASS FRAGMENTS EITHER FLEW OFF OR SETTLED ON TOP OF THE SHADE SCREEN. WE WERE DRIVING AT APPROXIMATELY 65 MPH AND THERE WERE NO CARS DIRECTLY IN FRONT OF US OR BEHIND. WE HAD THE AIR CONDITIONING SYSTEM ON WITH THE OUTSIDE TEMPERATURE AT ABOUT 70F. IT WAS A CLEAR MORNING AND THE SUN HAD JUST RISEN. OUR MB DEALER…SAID THEY WERE NOT AWARE OF OTHER INSTANCES OF EXPLODING GLASS SUNROOF S" |
| 71 | 5/25/2016 | 5/13/2016 | 2011 | E350 | 1087089 1 | "WHILE ENTERING ONTO THE SOUTHERN STATE PARKWAY IN LONG ISLAND N.Y., GOING ABOUT 45 MPH, FOR REASONS NOT |

| | | | | | KNOWN MY SUNROOF COMPLETELY SHATTERED. MY SUNROOF WAS COMPLETELY CLOSED AT THE TIME." |
|---|---|---|---|---|---|---|
| 72 | 4/11/2016 | 04/9/2016 | 2008 | C300 | 1085480 8 | "MY MERCEDES…WAS PARKED IN OUR DRIVEWAY. I WALKED OUTSIDE AND WAS SHOCKED TO SEE THAT THE SUNROOF GLASS HAD INEXPLICABLY EXPLODED OUTWARD. PLEASE SEE THE ATTACHED PHOTOS. OUR SLIDING SUNROOF SHADE WAS OPEN. WE FOUND GLASS ALL OVER THE ROOF OF THE CAR, IN THE CAR AND ON THE GROUND…. WE ALSO FEEL VERY FORTUNATE THAT WE WERE NOT DRIVING THE CAR, FOR THIS DEFECT AND RESULTING EXPLOSION COULD HAVE CAUSED INJURY AND A TERRIBLE ACCIDENT." |
| 73 | 3/21/2016 | 3/18/2016 | 2008 | E350 | 1085089 3 | "PANORAMIC SUNROOF EXPLODED OUTWARD, WITH ANYTHING STRIKING THE CAR. ON THE ROAD ALONE WITH NO OTHER VEHICLES, THE GLASS SHATTERED UPWARD, HELD IN PLACE FOR A BIT UNTIL I COULD EXIT, THEN FALLING INWARD AS I |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | PULLED INTO A SERVICE STATION." |
| 74 | 1/23/2016 | 1/23/2016 | 2013 | GLK350 | 1082188 7 | "PANORAMIC SUNROOF EXPLOSION. DRIVING ON A CITY STREET AT 45 MPH WHEN SUDDENLY THE CLOSED SUNROOF SHATTERED. NO FOREIGN OBJECTS OR CONTACT OCCURRED. IT WAS SPONTANEOUS EXPLOSION." |
| 75 | 10/06/2015 | 06/29/201 5 | 2015 | C400 | 1078009 2 | "THE PANORAMIC SUNROOF IN MY CAR EXPLODED…. THE CAR WAS PURCHASED NEW FROM MERCEDES BENZ…. THE CAR HAD 146 MILES ON THE ODOMETER. …I WAS TRAVELING…AT APPROXIMATELY 65MPH. THERE WERE NO OTHER VEHICLES IN CLOSE PROXIMITY,…. THE ROAD WAS RELATIVELY SMOOTH AND THE WEATHER WAS DRY. NO PROJECTILE HIT THE GLASS PRIOR TO IT EXPLODING. WHEN THE SUNROOF EXPLODED, ALL I HEARD WAS A LARGE BANG AND THEN GLASS FALLING INTO THE CAR AND ALSO 'EXITING' THE CAR. THE GLASS DEBRIS LEFT SIGNIFICANT PITTING ON THE TRUNK OF THE CAR. I ESTIMATE 25% OF |

| | | | | | | THE GLASS CAME INTO THE CAR. I SWERVED INTO TO THE EMERGENCY LANE AND STOPPED IN THE EMERGENCY LANE." |
|---|---|---|---|---|---|---|
| 76 | 9/11/2015 | 9/1/2015 | 2015 | GLK350 | 10763088 | "MY WIFE WAS DRIVING ON THE INTERSTATE AT ~65MPH IN HER NEW 2015 GLK350 W/ PANORAMIC & 4MATIC & ~7000 MILES. IT WAS 7:00PM IN VERY LIGHT TRAFFIC. NO ONE WAS NEAR HER AT THE TIME OF INCIDENT. SHE HEARD A VERY LOUD STARLING BANG. AT FIRST SHE THOUGHT A TIRE HAD BLOWN. SHE THEN HEARD FAINT CRACKLING NOISE ABOVE HER HEAD. THE SUN SHADE WAS CLOSED SO NO GLASS DROPPED INTO THE CABIN AREA. WITHIN MINUTES SHE NOTICED THAT THE SUNROOF HAD SHATTERED. NOTEWORTHY POINT, THE SUNROOF GLASS WAS BROKEN CONVEX. SO, IT WAS SLIGHTLY POUCHED UPWARD, WHICH WE THOUGHT WAS UNUSUAL. I TAPED THE SUNROOF AND BROUGHT IT TO THE LOCAL DEALER THE NEXT DAY. THE DEALER SAID SHE HIT SOMETHING AND |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | THAT'S WHAT CAUSED THE ISSUE. I MENTIONED THAT THEIR WAS NO ONE ELSE AROUND AND THEIR WERE LOTS OF INTERNET REPORTS WITH SIMILAR PROBLEMS. HE SAID YOU CAN FIND ANYTHING ON THE INTERNET. MY COST TO REPLACE SUNROOF WAS $2500 USING MY INSURANCE, OR $1500 WITH A DISCOUNT IF I WAS PAYING FOR IT MYSELF…. AFTER RESEARCHING…, I FOUND APPROX. 9 CASES OF LATE MODEL MERCEDES WITH A VERY SIMILAR ISSUES. THERE'S ALSO NUMEROUS ARTICLES AND NEWS STORIES INCLUDING OTHER CAR MANUFACTURERS ON THE NET WITH THE SAME SUNROOF ISSUES. THERE IS A SAFETY ISSUE HERE." |
| 77 | 5/6/2015 | 4/23/2015 | 2015 | S550 | 1071502 4 | "DRIVING ON THE FREEWAY AND HEARD A LOUD SOUND. THE GLASS ON THE SUNROOF EXPLODED AND BROKE OFF IN CHUNKS HITTING DRIVER REPEATEDLY UNTIL APPROXIMATELY 80% OF THE GLASS COLLAPSED. GLASS |

| | | | | | | SHARDS CUT DRIVER. MBWORLD SHOWS SIMILAR INCIDENTS TO OTHER MERCEDES-BENZ VEHICLES. MERCEDES-BENZ…WOULD NOT COVER UNDER WARRANTY OR ADMIT DEFECT. SEE SAMPLE OF POSTINGS: HTTP://MBWORLD.ORG/FORUMS/E-CLASS-W212/405329-2011-E350-EXPLODING-SUNROOF.HTML HTTP://MBWORLD.ORG/FORUMS/C-CLASS-W204/544374-EXPLODING-SHATTERED-SUNROOF-TRISTAR-MERCEDES-ST-LOUIS-MO.HTML HTTP://MBWORLD.ORG/FORUMS/C-CLASS-W203/346317-C230-SUNROOF-EXPLODED.HTML HTTP://MBWORLD.ORG/FORUMS/C-CLASS-W203/525268-SUNROOF-BLEW-OUT-EXPLODED.HTML HTTP://MBWORLD.ORG/FORUMS/GL-CLASS-X166/550965-PANORAMIC-ROOF-BLEW-UP.HTML. *TR" |
|---|---|---|---|---|---|---|
| 78 | 3/8/2015 | 2/22/2015 | 2011 | GLK350 | 10692832 | "I WAS DRIVING ON THE INTERSTATE, AND I HEARD A VERY LOUD BOOM FROM MY VEHICLE, FOLLOWED |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | BY CRACKLING SOUND. MY SUNROOF SHATTERED AS WELL AS THE FIXED PIECE BETWEEN MY WINDSHIELD AND MOVING PANE OF SUNROOF. …I DROVE THE VEHICLE TO A LOCAL DEALERSHIP AND WAS TOLD AN OBJECT STRUCK THE VEHICLE AND CAUSED THE DAMAGE TO THE VEHICLE. THE FIRST PANE OF GLASS HAD A 1 IN DIAMETER HOLE WITH A STARBURST PATTERN AND THE SECOND PANE HAD VERY LITTLE VISIBLE DAMAGE TO IT OTHER THAN THE HUNDREDS OF CRACKS IN IT. I AM CONCERNED ABOUT WHY THE FIRST PANE OF GLASS THAT IS ANGLED OUTWARD TO THE ROAD IS NOT MADE OF SAFETY GLASS OR METAL AND WAS CONSTRUCTED OF TEMPERED GLASS. I WAS LUCKY THAT I HAD MY BLIND CLOSED AND THAT THE GLASS DID NOT SEPARATE FROM THE VEHICLE AND STRIKE ANY OF THE VEHICLES BEHIND ME. AS I TOLD THE GENTLEMEN AT THE DEALERSHIP, IF ROAD DEBRIS HITS MY |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | VEHICLE I SHOULD NOT HAVE TO REPLACE A THIRD OF MY ROOF. ROCKS HAVE HIT MY WINDSHIELD AND CHIPPED IT, BUT FOR A ROCK TO HIT MY VEHICLE AND CAUSE SUCH EXTENSIVE DAMAGE IS POOR DESIGN OR QUALITY OF MANUFACTURING. *TR" |
| 79 | 1/28/2015 | 1/14/2015 | 2010 | E550 | 1067949 1 | ".... I WAS TRAVELING ON INDIANA HIGHWAY....DRIVING THE SPEED LIMIT OF 70 MILES PER HOUR. AS I WAS DRIVING, ALL OF A SUDDEN THERE WAS A LOUD EXPLOSION. I SWERVED TO THE LEFT IN THE VEHICLE BECAUSE I WAS UNSURE WHAT THE EXPLOSION WAS OR CAME FROM. AS SOON AS I HEARD THE EXPLOSION, THICK PIECES OF GLASS FELL FROM THE SUNROOF. LARGE PIECES OF GLASS FELL ON THE BACK SEAT. GLASS FELL ON THE PASSENGER SIDE AS WELL AS PIECES OF GLASS FELL ON MY SHOULDERS AND ON THE DRIVER'S SIDE FLOOR.... THERE WAS NO INDICATION OF OUTSIDE FORCES. I WAS VERY NERVOUS.... I PULLED OVER...AND |

| | | | | | | EVALUATED MY VEHICLE. I WAS IN AMAZED BECAUSE THE SUNROOF HAD A WHOLE THE SIZE OF A BASKETBALL. I CALLED THE NEAREST MERCEDES BENZ DEALERSHIP TO SCHEDULE AN APPOINTMENT. …I TOOK MY VEHICLE TO MERCEDES BENZ AND ALSO CONTACTED HEADQUARTERS TO FILE A COMPLAINT. THIS INCIDENT WAS NOT CAUSED BY MY ACTIONS, NOR EXTERNAL FACTORS BUT THE MANUFACTURING OR DESIGN DEFECT OF THIS VEHICLE. I HAVE CONDUCTED FURTHER INVESTIGATION INTO THIS MATTER AND HAVE EVIDENCE OF OTHER MERCEDES BENZ OWNERS WHOM THIS SAME PROBLEM OCCURRED. I SPOKEN WITH MERCEDES BENZ REGIONAL MANAGER…. SHE STATED MERCEDES BENZ WILL GIVE ME $1,000 TOWARDS THE REPAIR IF I SIGN A WAIVER NOT TO SUE. I REJECTED THIS OFFER BECAUSE THERE IS A DEFECT IN MERCEDES BENZ VEHICLES…." |
|---|---|---|---|---|---|---|

| 80 | 1/6/2015 | 1/6/2015 | 2013 | C250 | 1067056 8 | "AS I WAS DRIVING ON THE FREEWAY, I HEARD AND EXPLOSION FOLLOWED BY A RAIN SOUND, MY SUNROOF HAD EXPLODED AND THE GLASS CAN BACK DOWN. NOTHING HIT THE SUN ROOF, THE GLASS WAS POINTING OUT, IT ACTUALLY EXPLODED. AFTER RESEARCH I FOUND THIS IS COMMON IN MERCEDES AND I HAD NO IDEA THAT SOMETHING LIKE THIS WAS EVEN POSSIBLE. I HAVE HAD THE CAR FOR ONLY 3 MONTHS." |
|----|----------|----------|------|------|-----------|-----------|
| 81 | 12/23/2014 | 12/20/201 4 | 2011 | ML550 | 1066809 5 | "DRIVING ON A FEEDER ROAD IN LIGHT TRAFFIC AT ABOUT 55 MPH, WE WERE STARTLED BY AN ENORMOUS LOUD EXPLOSIVE SOUND ON OUR SUNROOF…, LIKE A BOMB SOUND. PULLED OVER AND SLID THE INSIDE VENTED HEADLINER/CURTAIN BACK ABOUT 6 INCHES AND SAW A HOLE THE SIZE OF TWO FISTS PLUS SHATTERED GLASS. WE RECALL THAT WE WEREN'T FOLLOWING BEHIND ANY TRUCKS. MERCEDES DEALERSHIP ESTIMATED $2,777.00 TO REPLACE GLASS, DROP HEADLINER AND REMOVE BROKEN |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | GLASS SHARDS/PIECE. MB DID NOT OFFER ANY EXPLANATION AS TO DEFECTIVE SUNROOF GLASS. WE OWNED NUMEROUS MODELS OF MERCEDES WITH SUNROOF AND NEVER EXPERIENCED SUCH A FRIGHTENING EPISODE. *TR" |
| 82 | 11/25/2014 | 11/25/2014 | 2013 | GLK350 | 10660904 | "THE SUNROOF…SPONTANEOUSLY EXPLODED WITH NO WARNING. NOTHING HIT THE ROOF OR ANY OTHER PART OF THE CAR. THE WEATHER WAS ABOUT 36 DEGREES FAHRENHEIT, NOT TOO COLD, NOT TOO HOT. THERE WAS A LOUD BANG (LIKE THE SOUND OF A GUNSHOT) FOLLOWED BY 5 - 10 MINUTES OF CRACKLING AS THE SUNROOF GLASS BROKE INTO HUNDREDS OF PIECES…. I WAS DRIVING ABOUT 35 MPH AT THE TIME. THERE WAS NOTHING UNUSUAL THAT WOULD HAVE CAUSED THIS. *TR" |

51. Few, if any, of the drivers who have contacted the federal government have reported that the shattering occurred in connection with an external object

striking their vehicle.

## C.  **Mercedes' Knowledge of the Defect**

52.  Mercedes has long known that its panoramic sunroofs are prone to unexpected and dangerous shattering.

53.  Like other automobile manufacturers, Mercedes as a regular practice monitors NHTSA's website for emerging problems with its vehicles. Federal law requires automakers like Mercedes to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

54.  Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety-related. *Id.* Thus, Mercedes knew or should have known of the many complaints about the panoramic sunroof defect logged by NHTSA Office of Defects Investigation ("ODI"). The content, consistency, and disproportionate number of those complaints alerted, or

should have alerted, Mercedes to the panoramic sunroof defect.

55.     Since the introduction of panoramic sunroofs, NHTSA has continued to bring awareness to the issues and danger associated with shattering sunroofs through complaints and investigations.

56.     Mercedes is also aware that other manufacturers – whose vehicles have similarly designed panoramic sunroofs and similar shattering problems – have voluntarily initiated safety recalls to notify drivers of the danger and repair shattered sunroofs free of cost.  Yet, Mercedes has not done so.

57.     Mercedes claims its sunroofs shatter as a result of impact from roadway objects.

58.     Rocks or other objects thrown up by cars and trucks on the roadway would not impact the sunroof with sufficient force to cause it to shatter. Moreover, driver reports specifically contradict Mercedes' position.

**D.     The Dangers Posed to Occupants of Class Vehicles**

59.     NHTSA     and     responsible     automobile     manufacturers     have acknowledged that the spontaneous failure of panoramic sunroofs endangers drivers, passengers, and others on the road.

60.     Panoramic sunroofs are an expensive optional feature that can cost over one thousand dollars in the purchase or lease price and over a thousand dollars (if

not many thousands of dollars) to replace. For example, as one class member reported to NHTSA, when his or her 2016 S550 developed a crack, the class member reported the problem to Mercedes, and ultimately had to pay a Mercedes dealership $13,000 to replace the sunroof. *See* ¶ 50, NHTSA Complaint No. 2.

61.     A reasonable person considering whether to purchase or lease a Mercedes vehicle would want to be informed about the panoramic sunroof defect so that he or she could opt against paying the increased price for the optional feature or simply forego purchasing or leasing the vehicle altogether.

62.     When the Mercedes panoramic sunroofs shatter, they usually make a sudden and extremely loud noise, followed by shards of glass raining down onto the driver and passengers. Drivers report that the falling shards of glass have cut them and their passengers and have also caused damage to the interior of the vehicles as well as scratching the vehicles' exterior paint. Drivers have also reported a number of near-miss accidents that occurred after they were startled or distracted by the shattering.

63.     Other manufacturers concur that this is a serious safety issue. When Nissan initiated a safety recall for shattering panoramic sunroofs, for example, it acknowledged that drivers "could be injured by falling glass," and that "[i]f the glass panel were to break while the vehicle is in motion, it could cause driver distraction,

increasing the risk of a crash." And when Hyundai initiated its recall, it too acknowledged that the shattering of panoramic sunroofs "relates to motor vehicle safety," including by posing a risk of cutting vehicle occupants.

64. Similarly, in connection with the Hyundai recall, NHTSA wrote that the breaking of the panoramic sunroof could lead "to personal injury or a vehicle crash." In connection with an Audi recall, NHTSA wrote that "should the sunroof's glass break while the vehicle is in use, the falling glass could cut and injure the driver or passengers [and] could also distract the driver, increasing the risk of a crash."

E.  **Mercedes Refuses to Warn Drivers**

65. Despite the high number of complaints and the danger posed by the defect, Mercedes continues to conceal its existence from current drivers and potential customers alike. Although Mercedes has a duty to alert potential customers to the existence of the Defect at the point of sale as this fact would be material to the potential customer's purchasing decision, Mercedes chooses to intentionally conceal or, at best, omit the existence of the defect to consumers considering the purchase of a Mercedes vehicle. Mercedes similarly fails to warn drivers who experience a shattering event of the existence of the Defect and the danger of a shattering event reoccurring after those drivers bring their vehicles in for repair. Mercedes knows of the defect yet continues to profit from the sale and lease of vehicles to unwitting

consumers.

66.     Mercedes continues to conceal the defect, even though it knows that the defect is not reasonably discoverable by drivers unless they experience a failure and are exposed to the attendant safety risks, including injury from the falling glass and driver distraction when the defect manifests, which can lead to a collision.

67.     Mercedes remains silent even as it continues to receive complaints from concerned drivers.

68.     As a result of Mercedes' inaction and silence, consumers are unaware that they purchased or leased a vehicle that has a defective sunroof, and continue to drive these unsafe vehicles. Additionally, drivers who have experienced an exploding sunroof and bring their vehicles to a dealership for repairs are not told that identical (and therefore equally defective, though that aspect is not disclosed) sunroofs are to be installed as replacements in their vehicles.

69.     Some manufacturers who have had vehicles with similar panoramic sunroof problems—Audi, Hyundai, and Nissan—have voluntarily initiated safety recalls as a result, notifying drivers of the danger and offering to repair the sunroofs free of cost.

**F.     Mercedes' Warranty Process is Deceptive**

70.     Mercedes advertises that the basic warranty for new Mercedes vehicles

is for "4 years/50,000 Miles." Mercedes warrants to "make any repairs or replacements necessary to correct defects in materials or workmanship[.]" (https://www.mbusa.com/content/dam/mb-nafta/us/owners/maintenance-landing/New_Vehicle_Warranty.pdf; last accessed on December 17, 2020).

71. Plaintiff and Class Members experienced damage from the sunroof defect within the warranty periods of their vehicles. Plaintiff and Class Members reasonably expected that any and all damage that resulted from the sunroof defect would be covered under the warranty, and that they would not be charged for such repairs.

72. Mercedes has systematically denied coverage with respect to the defective sunroofs. Plaintiff and numerous Class Members have been forced to incur substantial repair bills and other related damages, including being forced to make claims under their automotive insurance policies and incurring substantial deductibles.

## PLAINTIFF'S EXPERIENCE

73. On May 26, 2018, Plaintiff Hilaret Zaroukian leased a new 2018 Mercedes Benz, E-Class E-300 bearing VIN Number WDDZF4JB2JA456029, from CalStar Motors for her own personal, family, and household use.

74. CalStar Motors is an authorized Mercedes Benz dealership located in

Glendale, California.

75.    The Mercedes Benz vehicle Plaintiff leased has a sunroof for which Plaintiff paid a premium.

76.    Passenger safety and reliability were important factors in Plaintiff's decision to purchase her vehicle. Before making her purchase, watched television ads, and test drove her vehicle with a dealership salesperson pre-purchase who made no reference to the defect. Before purchase, Plaintiff also reviewed the vehicle's Monroney Sticker or "window sticker" which listed official information about the vehicle, which also made no reference to the defect. Plaintiff believed her vehicle would be safe, reliable, and free of defects.

77.    On October 1, 2020, Ms. Zaroukian was driving her 2018 Mercedes by herself. At approximately 8:00 pm, she was traveling around the speed limit on the 5 Freeway. It was a clear evening. On information and belief, the outside temperature was about 87 degrees. There was light traffic on the highway. She had been driving for about 10 minutes when she heard a horrible noise that sounded like a gunshot. Luckily, Plaintiff's sun-shade was closed, which prevented most of the glass from entering the cabin while she was driving.

78.    The sound of the exploding glass frightened her, and she pulled over to inspect what had happened. Once out of the car, she saw that the entire panoramic

sunroof had spontaneously exploded into small pieces.

79.    After calling her son, she cautiously drove home on city streets.

80.    Below are photographs of Ms. Zaroukian's shattered sunroof from her

leased 2018 Mercedes vehicle, with the majority of the glass missing from the frame.













81.     The very next morning, Plaintiff took her vehicle to the dealership, CalStar Motors, in Glendale, California.  Plaintiff spoke with Service Manage Sam Dalati who informed her that they would not cover the shattered sunroof under the warranty.  Mr. Dalati said that something must have hit the sunroof to cause it to

explode and that Plaintiff would have to pay herself to replace the sunroof. When Plaintiff went to pick up her car about 10 days later, she spoke with a worker who was taking her to her car who informed her that someone had come in with the exact same issue a few months earlier and that Mercedes would never admit responsibility for fear of damaging its reputation.

82. Plaintiff also called Mercedes' headquarters several times. The woman she spoke to at headquarters said that she would investigate it and get back to Plaintiff. Eventually, the woman from headquarters called Plaintiff back and told Plaintiff that something must have struck the sunroof and Mercedes' would not cover the cost of repair.

83. Ms. Zaroukian had the sunroof replaced at Zoom Autobody in Pasadena, California for $12,583.96, she paid $207.50 for a rental car from Enterprise. She was required to pay $1,000.00 out of pocket to repair the sunroof.

84. Mercedes' omissions were material to Plaintiff. Had Mercedes disclosed the panoramic sunroof defect at the point of sale, Plaintiff would have seen and been aware of those disclosures. Furthermore, had she known of the defect, she would not have leased the vehicle, or she would have paid substantially less. In addition, she would not have suffered the economic damages she sustained. Plaintiff did not receive the benefit of the bargain.

85.     At all times, Plaintiff, like all Class Members, has driven her vehicle in a manner both foreseeable and in which it was intended to be used, in the sense that she has not abused her vehicle or used it for purposes unintended by Mercedes, such as, for example, drag racing. However, despite this normal and foreseeable driving, the defect has rendered her vehicle unsafe and unfit to be used as intended.

## CLASS ACTION ALLEGATIONS

86.     Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23, on their federal and state claims as purchasers and lessees of "Class Vehicles." Class Vehicles include all Mercedes-Benz models below that are equipped with factory-installed panoramic sunroofs:

     a.  2003-present C-Class
     b.  2007-present CL-Class
     c.  2013-present CLA-Class
     d.  2003-present E-Class
     e.  2008-present G-Class
     f.  2007-present GL-Class
     g.  2012-presneet GLK-Class
     h.  2012-present GLC-Class
     i.  2012-present ML-Class
     j.  2010-present M-Class
     k.  2015 Mercedes Maybach S-600

l. 2009-present R-Class

m. 2013-present S-Class

n. 2013-present SL-Class; and

o. 2013-present SLK-Class

87. Plaintiff brings this action seeking certification of the following

Classes:

> **National Damages Class under Fed. R. Civ. P. 23(b)(3):**
> All persons within the United States who purchased or
> leased a Class Vehicle through the date of class
> certification (the "National Damages Class," or together
> with the Nation Injunctive Class, the "National Classes").

> **National Injunctive Class under Fed. R. Civ. P.
> 23(b)(2):** All persons within the United States who
> purchased or leased a Class Vehicle period through the
> date of class certification (the "National Injunctive Class,"
> or together with the National Damages Class, the
> "National Classes").

> **California Sub-Class under Fed. R. Civ. P. 23(b)(2)
> and 23(b)(3):** All persons in the State of California who
> purchased or leased a Class Vehicle period through the
> date of class certification (the "California Sub-Class").

> **Song-Beverly Sub-Class under Fed. R. Civ. P. 23(b)(2)
> and 23(b)(3):** All persons who purchased or leased a Class
> Vehicle in the State of California from the beginning of
> any applicable limitations period through the date of class
> certification (the "California Sub-Class").

88. Excluded from the proposed class is Mercedes; any affiliate, parent, or

subsidiary of Mercedes; any entity in which Mercedes has a controlling interest; any

officer, director, or employee of Mercedes; any successor or assign of Mercedes; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff; and anyone who purchased a Class Vehicle for the purpose of resale.

89. Members of the proposed classes are readily ascertainable because the class definitions are based upon objective criteria.

90. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Mercedes sold many thousands of Class Vehicles, including a substantial number in the United States as well as in California. The Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Members of the Classes number in the thousands to hundreds of thousands and are geographically disbursed throughout the United States. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The number of Members of the Classes is presently unknown to Plaintiff but may be ascertained from Defendants' books and records and/or from information and records in the possession of Defendants' third-party retailers and distributors. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

91. **Commonality and Predominance – Federal Rules of Civil**

**Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Members of the Classes and predominate over questions affecting only individual Members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

a. Whether the panoramic sunroofs in the Class Vehicles are designed, manufactured or use materials defectively such that they have a propensity to spontaneously shatter;

b. Whether Mercedes knew or should have known that its panoramic sunroofs are defectively designed, manufactured or use materials such that they have a propensity to spontaneously shatter, and if so, when it discovered this issue;

c. Whether the knowledge of this propensity to shatter would be important to a reasonable person, for example, because it poses an unreasonable safety hazard;

d. Whether Mercedes failed to disclose to or concealed from potential consumers the existence of the sunroofs' propensity to spontaneously shatter;

e. Whether Mercedes breached its express warranty

obligations;

f.     Whether Mercedes has a pattern and practice of attributing damages claimed by Plaintiff and Class Members to causes other than the complained-of defect;

g.     Whether Mercedes should be required to notify Class Members about the panoramic sunroofs' propensity to spontaneously shatter;

h.     Whether Mercedes should be required to cease its practice of providing the same or substantially similar replacement sunroofs as the defective sunroofs;

i.     Whether the Court may enter an injunction requiring Mercedes to cease it practice of replacing shattered panoramic sunroofs with identically defective replacement sunroofs;

j.     Whether this Court should grant other declaratory relief requested herein;

k.     Whether Mercedes has a duty to disclose to Plaintiff and Class Members the true character, quality and nature of the Class Vehicles and the sunroof defect;

l.    Whether Mercedes' conduct, as alleged herein, violates the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*;

m.    Whether Mercedes' conduct, as alleged, herein, violates the consumer protection laws of California; and

n.    Whether Mercedes' conduct, as alleged herein, entitles Plaintiff and Class Members to restitution under federal law and the laws of their respective states.

92.    **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were injured in the same way through Defendants' uniform misconduct, as described above.

93.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of the other Members of the Classes she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and she will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff.

94.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** The elements of Rule 23(b)(2) are met here. Defendants will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the defective panoramic sunroofs. Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as requested in the Prayer for Relief below, with respect to the Members of the Classes as a whole.

95.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Members of the Classes to individually seek redress for Defendants' wrongful conduct. Even if Members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the

class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## TOLLING OF THE STATUTES OF LIMITATIONS

96.     **Discovery Rule**. Plaintiff and the Class members' claims accrued upon discovery that the panoramic sunroofs installed in their Class Vehicles were prone to spontaneous failure. While Mercedes knew and concealed the fact that the panoramic sunroofs installed in the Class Vehicles have a defect that causes spontaneous failure, Plaintiff and the Class members could not and did not discover this fact through reasonable diligence.

97.     **Active Concealment Tolling**. Any statutes of limitations are tolled by Mercedes' knowing and active concealment of the fact that the panoramic sunroofs installed in the Class Vehicles suffered from the Defect. Mercedes kept Plaintiff and the Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on their part. The details of Mercedes' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class. Plaintiff and Class members could not have reasonably discovered the fact that the panoramic sunroofs installed in their Class Vehicles were defective.

98.    **Estoppel**. Mercedes was and is under a continuous duty to disclose to Plaintiff and Class the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. At all relevant times, and continuing to this day, Mercedes knowingly, affirmatively, and actively concealed the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. The details of Mercedes' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members. Plaintiff reasonably relied upon Mercedes' silence as to the defect, which was abetted by its active concealment. Based on the foregoing, Mercedes is estopped from relying on any statutes of limitation in defense of this action.

99.    **Equitable Tolling**. Mercedes took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with defective panoramic sunroofs. The details of Mercedes' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members. When Plaintiff learned about this material information, she exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing her and their claims. Mercedes fraudulently concealed its above-described wrongful acts. Therefore, all applicable statutes of limitation are tolled under the doctrine of

equitable tolling.

## CAUSES OF ACTION

### Count I
### Breach of Express Warranty

(Plaintiff individually, and on behalf of the National Classes, and, in the Alternative, the California Sub-Class)

100. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

101. Mercedes is and was at all relevant times a "merchant" with respect to motor vehicles under Cal. Com. Code § 2104(1) and "sellers" of motor vehicles under Cal. Com. Code § 2103(1)(d).

102. With respect to leases, Mercedes is and was at all times relevant times a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

103. The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 9102(a)(23) and Cal. Com. Code § 10103(a)(8). In connection with the purchase or lease of its new vehicles, Mercedes provided an express New Vehicle Limited Warranty for a period of four years or 50,000 miles, whichever occurs first.

104. This warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Mercedes vehicle supplied

by Mercedes subject to the exclusions listed or, if the part is covered by one of the separate coverages described in the following sections of this warranty, that specific coverage applies instead of the basic coverage.

105. Mercedes provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain. Accordingly, Mercedes' warranties are express warranties under the laws of California and other states.

106. The parts affected by the defect, including the panoramic sunroofs, and the brackets and assemblies to which the sunroofs were attached, were manufactured and distributed by Mercedes in the Class Vehicles and are covered by the warranties Mercedes provided to all purchasers and lessors of Class Vehicles.

107. Mercedes' conduct described in this Complaint constitutes a breach of express warranties under UCC § 2-313, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia, including Cal. Com. Code § 2313, *et seq.*:

> Ala. Code § 7-2-313, *et seq.*; Alaska Stat. § 45.02.313, *et seq.*; Ariz. Rev. Stat. § 47-2313, *et seq.*; Ark. Code § 4-2-313, *et seq.*; Colo. Rev. Stat. § 4-2-313, *et seq.*; Conn. Gen. Stat. § 42a-2-313, *et seq.*; 6 Del. C. § 2-313, *et seq.*; D.C. Code § 28:2-313, *et seq.*; Fla. Code § 672.313, *et seq.*; Haw. Rev. Stat. § 490:2-313, *et seq.*; Idaho Code § 28-2-313, *et seq.*; Ind. Code § 26-1-2-313, *et seq.*; Iowa Code § 554.2313, *et seq.*; Kan. Stat. § 84-2-313, *et seq.*; Ky. Rev.

Stat. § 355.2-313, *et seq.*; La. Rev. Stat § 9:2800.53(6) , *et seq.*; 11 M.R.S.A. § 2-313, *et seq.*; Md. Code Ann., Com. Law § 2-313, *et seq.*; Mass. Code 106, § 2-313, *et seq.*; Mich. Comp. Laws 440.2313, *et seq.*; Minn. Stat. § 336.2-313, *et seq.*; Miss. Code § 75-2-313, *et seq.*; Mo. Rev. Stat. § 400.2-313, *et seq.*; Mont. Code § 30-2-313, *et seq.*; Neb. U.C.C. § 2-313, *et seq.*; Nev. Rev. Stat. § 104.2313, *et seq.*; N.H. Rev. Stat. § 382-A:2-313, *et seq.*; N.M. Stat. § 55-2-313, *et seq.*; N.C. Gen. Stat. § 25- 2-313, *et seq.*; N.D. Cent. Code § 41-02-30, *et seq.*; Ohio Rev. Code § 1302.26, *et seq.*; Okla. Stat. Tit. 12A, § 2-313, *et seq.*; Or. Rev. Stat. § 72.3130, *et seq.*; R.I. Gen. Laws § 6A-2-313, *et seq.*; S.C. Code § 36-2-313, *et seq.*; S.D. Codified Laws § 57A-2-313, *et seq.*; Tenn. Code § 47-2- 313, *et seq.*; V.T.C.A., Bus. & C. § 2.313, *et seq.*; Utah Code § 70A-2-313, *et seq.*; Vt. Stat. Tit. 9A, § 2-313, *et seq.*; Va. Code § 8.2-313, *et seq.*; Wash. Rev. Code § 62A.2-313, *et seq.*; W. Va. Code § 46-2-313, *et seq.*; Wis. Stat. § 402.313, *et seq.*; and Wyo. Stat. § 34.1-2-313, *et seq.*

108.   Mercedes breached these warranties by selling and leasing Class Vehicles with the panoramic sunroof defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties with free repairs or replacements during the applicable warranty periods.

109.   Mercedes further breached these warranties by not correcting the defect. Although Mercedes warranted that it would correct defects in materials and workmanship in the Class Vehicles, Mercedes instead replaced shattered sunroofs in the Class Vehicles with identical defective sunroofs and thus has not corrected the defect. Mercedes has failed and refused to conform the panoramic sunroofs in the

Class Vehicles to the express warranty. Mercedes' conduct has voided any attempt to disclaim liability for its actions.

110. Plaintiff and Class Members notified Mercedes of the breach within a reasonable time or else they were not required to do so, because affording Mercedes a reasonable opportunity to cure its breach of written warranty would have been futile. Mercedes also knew of the defect and chose to conceal it and to fail to comply with its warranty obligations.

111. Mercedes' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under these circumstances. Mercedes' warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

112. Mercedes' attempt to limit its express warranty in a manner that would result in replacing its defectively designed panoramic sunroofs with identical defective sunroofs causes the warranty to fail of its essential purpose and renders the warranty null and void.

113. The time limits contained in Mercedes' warranty period were and are also unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Mercedes. A gross

disparity in bargaining power exists between Mercedes and the Class Members, and Mercedes knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before the end of the vehicles' useful lives.

114. Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of those obligations as a result of Mercedes' conduct described herein.

115. As a direct and proximate cause of Mercedes' breach, Plaintiff and the other Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and the Class Members have also incurred and will continue to incur costs for repair and replacement of defective panoramic sunroofs and damage resulting from the spontaneous shattering of such sunroofs.

116. Accordingly, recovery by Plaintiff and the other Class Members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Class Members, seek all remedies as allowed by law.

117. Plaintiff and Class Members are entitled to legal and equitable relief against Mercedes, including damages, consequential damages, specific

performance, attorneys' fees, costs of suit, and such further relief as the Court may deem proper. Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

**Count II**
**Breach of Implied Warranty of Merchantability**

(Plaintiff individually, and on behalf of the National Classes and, in the Alternative, the California Sub-Class)

118. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

119. Mercedes is and was at all relevant times a "merchant" with respect to motor vehicles under Cal. Com. Code § 2104(1) and "sellers" of motor vehicles under Cal. Com. Code § 2103(1)(d).

120. With respect to leases, Mercedes is and was at all times relevant times a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

121. The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 9102(a)(23) and Cal. Com. Code § 10103(a)(8). In connection with the purchase or lease of its new vehicles, Mercedes provided an express New Vehicle Limited Warranty for a period of four years or 50,000 miles, whichever occurs first.

122. A warranty that the Class Vehicles were in merchantable condition and

fit for the ordinary purpose for which vehicles are used in implied by law pursuant to California law.

123. These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles all were fitted with defective panoramic sunroofs having the propensity to spontaneously explode.

124. Mercedes was and is in actual or constructive privity with Plaintiff and Class Members.

      a.    Plaintiff and the Class Members had and continue to have sufficient direct dealings with Mercedes and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. Mercedes' authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiff and the

Class Members.

b.    Alternatively, privity is not required to assert this claim because Plaintiff and the Class Members are intended third-party beneficiaries of contracts between Mercedes and its dealers, franchisees, representatives, and agents.

c.    By extending express written warranties to end-user purchasers and lessees, Mercedes brought itself into privity with Plaintiff and Class Members.

125.  At all relevant times, California law imposed upon Mercedes a duty to ensure that the sunroofs installed in the Class Vehicles were fit for the ordinary purposes for which panoramic sunroofs are used and that they pass without objection in the trade under the contract description.

126.  Mercedes has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

127.  The sunroofs installed in the Class Vehicles were defective at the time they left Mercedes' possession. Mercedes knew of this defect at the time the purchase and lease transactions occurred. Thus, the sunroofs installed in the Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable

condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

128.   Mercedes failed to inform Plaintiff and Class Members of the defective condition of the panoramic sunroofs. The failure to warn Plaintiff and Class Members of this defective condition constitutes a further breach by Mercedes of the implied warranties of merchantability.

129.   Plaintiff and Class Members used the sunroofs installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Mercedes or by operation of law in light of Mercedes' unconscionable conduct.

130.   Mercedes had actual knowledge of, and received timely notice regarding, the defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

131.   In addition, Mercedes received, on information and belief, numerous consumer complaints and other notices from customers advising of the defect associated with the sunroofs installed in the Class Vehicles.

132.   By virtue of the conduct described herein, Mercedes breached the implied warranty of merchantability.

133.   As a direct and proximate result of Mercedes' breach of warranties, Plaintiff and Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their sunroofs.

134.   Plaintiff and Class Members are entitled to legal and equitable relief against Mercedes, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem proper.

135.   As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, Plaintiff and Class Members have been damaged in amount to be proven at trial.

### Count III
### Violation of the Magnuson-Moss Warranty Act ("MMWA"),
### 15 U.S.C. § 2301, *et seq.*

(Plaintiff individually, and on behalf of the representative State classes)

136.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

137.   The Magnuson-Moss Warranty Act, 15 U.S.C. §2301(d)(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to

comply with a written or implied warranty.

138. Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

139. Mercedes is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301(4)-(5).

140. Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

141. Mercedes provided a written warranty for each Class Vehicle. Mercedes' express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. §2301(7).

142. Mercedes breached the warranties by:

    a.    Offering a 36 month/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    b.    Selling and leasing Class Vehicles with panoramic sunroofs that were defective in material and workmanship,

requiring repair or replacement within the warranty periods; but

    c.    Refusing to honor the express warranties by not repairing or replacing the panoramic sunroofs free of charge.

143. Plaintiff and Class Members own or lease Class Vehicles that experienced spontaneous panoramic sunroof shattering during the period of warranty coverage.

144. Despite Mercedes' warranty, Mercedes has not repaired or replaced these shattered panoramic sunroofs at no charge to the consumers. In fact, Mercedes has denied claims made under its warranty(ies) by consumers whose Class Vehicle panoramic sunroof shattered.

145. Mercedes' breach of express warranty(ies) has deprived Plaintiff and Class Members of the benefit of their bargain.

146. Plaintiff and Class Members have had sufficient dealings with either Mercedes or its franchisees, representatives, and agents to establish any required privity of contract. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Mercedes and its dealers and specifically of Mercedes' express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class

Vehicles and have no rights under the warranty agreements with the Class Vehicles. The warranty agreements were designed for and intended to benefit the consumers only.

147.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

148.   Mercedes has been afforded reasonable opportunity to cure its breaches of warranty, including when Plaintiff brought her Class Vehicle in for repair of the defective panoramic sunroof.

149.   Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have all sufficiently notified Mercedes, thus providing Mercedes with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA. On December 21, 2020 Plaintiff sent a notice letter to Mercedes.

150.   Mercedes has not cured the breach of warranty described above and continues to deny warranty coverage when Plaintiff and Class Members present their vehicles for repair after their Class Vehicles' panoramic sunroofs spontaneously shattered.

151.   Resorting to any informal dispute settlement procedure or affording Mercedes another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Mercedes has repeatedly failed to disclose the panoramic sunroof defect or provide repairs at no cost and, therefore, has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford Mercedes a reasonable opportunity to cure its breach of warranty(ies) is excused and/or has been satisfied.

152.   As a direct and proximate result of Mercedes' warranty(ies) breach, Plaintiff and Class Members sustained damages and other losses to be determined at trial. Mercedes' conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

### Count IV
### Breach of Implied Warranty
### Pursuant to Song-Beverly Consumer Warranty Act
### California Civil Code §§ 1792 and 1791.1, *et seq.*

(Plaintiff individually, and on behalf of the Song-Beverly Sub-Class)

153.   Plaintiff re-alleges and incorporates by reference the preceding

paragraphs as if fully set forth herein.

154. Plaintiff brings this cause of action against Defendants on behalf of herself and the Implied Warranty Sub-Class.

155. Mercedes was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Mercedes knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

156. Mercedes provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their sunroofs suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

157. Mercedes impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their sunroofs, which were manufactured, supplied, distributed, and/or sold by Mercedes, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their sunroofs would be fit for their intended use.

158.   Contrary to the applicable implied warranties, the Class Vehicles and their sunroofs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.   Instead, the Class Vehicles are defective, including the defective sunroofs.

159.   The defect is inherent and was present in each Class Vehicle at the time of sale.

160.   Because of Mercedes' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' sunroofs are substantially certain to fail before their expected useful life has run.

161.   Mercedes' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**Count V**
**Violation of the California False Advertising Act**
**Business & Professions Code §§ 17500, *et seq.***

(Plaintiff individually, and on behalf of the California Sub-Class)

162.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

163.  Mercedes engaged in unfair and deceptive advertising in violation of California Business and Professions Code § 17500, *et seq.*, as alleged herein.

164.  These acts and practices, as described above, have deceived Plaintiff and California Sub-Class Members, causing them to lose money by purchasing Mercedes Class Vehicles or paying more than they otherwise would, as herein alleged, and have deceived and are likely to deceive the consuming public. Accordingly, Mercedes' business acts and practices, as alleged herein, have caused injury to Plaintiff and California Sub-Class Members.

165.  In the absence of Mercedes' active concealment, omissions, and misrepresentations, Plaintiff and California Sub-Class Members would not have purchased or leased Mercedes vehicles with a panoramic sunroof or would not have paid a price premium for them.

166.  Plaintiff and California Sub-Class Members are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits,

95

compensation, and benefits which may have been obtained by Mercedes as a result of such business acts or practices, and enjoining Mercedes from engaging in the practices described herein.

**Count VI**
**Violation of the California Consumer Legal Remedies Act**
**California Civil Code section 1750 *et seq.*,**

(Plaintiff individually and on behalf of the California Sub-Class)

167. Plaintiff re-alleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

168. Defendants are "persons" as defined by California Civil Code section 1761(c).

169. Plaintiff and the California Sub-Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

170. By failing to disclose and concealing the defective nature of the sunroofs from Plaintiff and prospective California Sub-Class members, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles and their sunroofs had characteristics and benefits that they do not have, and represented that the Class Vehicles and their sunroofs were of a particular standard, quality, or grade when they were of another. See Cal. Civ. Code §§ 1770(a)(5) &

(7). For example, in addition to Mercedes' active concealment and omissions, Mercedes misrepresented that the Class Vehicles included a luxury upgrade with the inclusion of the panoramic sunroof, and that the sunroof was properly designed, safe, and that the vehicle as a whole was merchantable.

171. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendant' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

172. Defendants knew that the Class Vehicles and their sunroofs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

173. Defendants were under a duty to Plaintiff and the California Sub- Class members to disclose the defective nature of the sunroofs and/or the associated repair costs because:

    a.    Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' sunroofs;

    b.    Plaintiff and the California Sub-Class Members could not reasonably have been expected to learn or discover that their sunroofs had a dangerous safety defect until it

manifested; and

c.    Defendants knew that Plaintiff and the California Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

174.   In failing to disclose the defective nature of sunroofs, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

175.   The facts Defendants concealed from or failed to disclose to Plaintiff and the California Sub-Class members are material, in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiff and the California Sub-Class members known that the Class Vehicles' sunroofs was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

176.   Plaintiff and the California Sub-Class members are reasonable consumers who do not expect the sunroofs installed in their vehicles to exhibit a defect that causes them to shatter without outside influence. This is the reasonable and objective consumer expectation relating to a vehicle's sunroof.

177.   As a result of their reliance on Mercedes' omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of

money, property, and/or value of their Class Vehicles. Additionally, as a result of the defect, Plaintiff and the California Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' sunroofs are substantially certain to fail before their expected useful life has run.

178. Plaintiff and the California Sub-Class members are entitled to equitable relief.

179. Plaintiff and the California Sub-Class Members are entitled to, pursuant to California Civil Code §1780(1)(2), an order enjoining the above-described wrongful acts and practices of Mercedes, and ordering the payment of reasonable litigation costs, attorneys' fees, and any other relief deemed appropriate and proper by the Court under California Civil Code §1780.

180. Plaintiff provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a). If, within 30 days, Defendants fail to provide appropriate relief for their violations of the CLRA, Plaintiff will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief she seeks now, on behalf of herself and the California Sub-Class.

**Count VII**
**Violation of the California Unfair Competition Law**
**Business & Professions Code §§ 17200, *et seq.***

(Plaintiff individually and on behalf of the California Sub-Class)

181.   Plaintiff re-alleges and incorporates by reference all allegations raised in preceding paragraphs as if fully stated herein.

182.   California Business and Professions Code section 17200 prohibits any "unfair deceptive, untrue or misleading advertising." For the reasons discussed above, Mercedes has engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code sections 17200, *et seq.*

183.   California Business & Professions Code section 17200 also prohibits any "unlawful, unfair or fraudulent business act or practice."

184.   Mercedes has violated the prohibition memorialized in Sections 17200, *et seq.*'s outlawing engagement in unlawful, unfair or fraudulent acts and practices by, among other things: making the misrepresentations and omissions of material fact as alleged herein; violating California False Advertising Act – Business & Professions Code §§ 17500, *et seq.*, by actively concealing the defect and making the omissions and/or misrepresentations about Class Vehicles; violating the Song-Beverly Consumer Warranty Act by breaching implied warranties, and violating section 1770 of the Consumers Legal Remedies Act. For example, in addition to

actively concealing and failing to disclose the defect, Mercedes violated these California statutes by at least misrepresenting that the Class Vehicles included a luxury upgrade with the inclusion of the panoramic sunroof.

185. Plaintiff and California Sub-Class Members reserve the right to allege other violations of law that constitute other unlawful business acts or practices. Mercedes conduct is ongoing and continues to this date.

186. Mercedes' acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein also constitute deceit under Cal. Civ. Code § 1710: "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."

187. Mercedes' acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein also constitute violations of Sections 17200, *et seq.*'s prohibition against fraudulent acts and practices.

188. Mercedes' acts, omissions, misrepresentations, practices, and nondisclosures, as alleged herein, also constitute "unfair" business acts and practices within the meaning of Business & Professions Code sections 17200, *et seq.* in that Mercedes' conduct is substantially injurious to consumers and offends public policy. Plaintiff asserts violations of the public policy of engaging in false and misleading

advertising, unfair competition, and deceptive conduct towards consumers. There were reasonable alternatives available to further Mercedes' legitimate business interests other than the conduct described herein.

189.   Any benefit to the public from such actions by Mercedes was outweighed by the negative consequences from them, and they were thus unfair.  The actions by Mercedes were also unfair as against public policy for the members of the public to have safe transportation, and merchantable vehicles that do not have safety defects.

190.   This conduct constitutes violations of the unfair prong of California Business & Professions Code sections 17200, *et seq.*

191.   Mercedes' conduct is also a breach of warranty as previously alleged herein. Because Mercedes breached express warranties to Plaintiff and California Sub-Class Members, Mercedes has violated California Commercial Code §2313. Mercedes also violated the CLRA, as noted above.

192.   Mercedes' actions thus are "unlawful" within the meaning of Cal. Bus. & Prof. Code § 17200 et seq.

193.   Mercedes' unfair business practices and conduct described herein were the immediate and proximate cause of loss of money and property suffered by Plaintiff and California Sub-Class Members.

194. Mercedes' unfair business practices and conduct described herein caused Plaintiff and California Sub-Class Members to purchase or lease, or pay a premium for Mercedes vehicles.

195. Furthermore, Mercedes' misrepresentations and omissions were fraudulent in that they were likely to deceive reasonable persons, and caused Plaintiff and California Sub-Class Members loss of money and property because had they known the truth about Mercedes' vehicles, they would not have purchased or leased them, or paid as much for them.

196. Mercedes's conduct caused and continues to cause substantial injury to Plaintiff. Plaintiff and the other California Sub-Class Members have suffered injury in fact and have lost money as a result of Mercedes' wrongful conduct.

197. Pursuant to Business & Professions Code section 17203, Plaintiff and the other California Sub-Class Members seek an order requiring Mercedes to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Mercedes to engage in a corrective advertising campaign, and other corrective conduct as necessary and proper.

198. Unless Mercedes is enjoined from continuing to engage in these unfair, unlawful, and fraudulent business practices, Plaintiff, and the public, will continue to be injured by Mercedes' actions and conduct.

199. Mercedes has thus engaged in unlawful, unfair, and fraudulent business acts and practices, entitling Plaintiff and the other California Sub-Class Members to judgment and equitable relief against Mercedes, as set forth in the Prayer for Relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Mercedes as a result of such business acts or practices, and enjoining Mercedes from engaging in the practices described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and the Classes request that the Court enter a judgment awarding the following relief:

A. An order certifying the proposed classes and appointing Plaintiff's counsel to represent the classes;

B. An order awarding Plaintiff and Class Members their actual damages, punitive damages, and/or any other form of monetary relief provided by law;

C. An order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D. An order requiring Mercedes to adequately disclose and repair the defective panoramic sunroofs;

E.    An order awarding Plaintiff and Class Members pre-judgment and post-judgment interest as allowed under the law;

F.    An order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

G.    An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury all issues so triable under the law.


DATED:  January 29, 2021                Respectfully submitted,

*/s/ Rachel Soffin*
Rachel Soffin, GA Bar No. 255074
Mark E. Silvey, GA Bar No. 646837
Gregory F. Coleman*
Adam A. Edwards*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
T: 865-247-0080
F: 865-522-0049
rachel@gregcolemanlaw.com
mark@gregcolemanlaw.com
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com

Steven R. Weinmann*
Tarek H. Zohdy*
Cody R. Padgett*
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
T: 310-556-4811
F: 310-943-0396
Steven.Weinmann@capstonelawyers.com
Tarek.Zohdy@capstonelawyers.com
Cody.Padgett@capstonelawyers.com

Joshua H. Haffner*
Graham G. Lambert*
**HAFFNER LAW PC**
445 South Figueroa Street, Suite 2625
Los Angeles, California 90071
T: 213-514-5681
F: 213-514-5682
jhh@haffnerlawyers.com
gl@haffnerlawyers.com

*Attorneys for Plaintiffs and the*
*Putative Class*

\* Applications *pro hac vice* forthcoming